**WALL STREET WEST, INC., and Theodore V. Abbruzzese, Petitioners,**

v.

**SECURITIES AND EXCHANGE COMMISSION, Respondent.**

No. 82–1125.

United States Court of Appeals, Tenth Circuit.

Oct. 12, 1983.

William R. Fishman, of Fishman, Geman, Gersh & Bursiek, P.C., Denver, Colo., for petitioners.

Robert Mills, Washington, D.C. (Edward F. Greene, Gen. Counsel, Jacob H. Stillman; Associate Gen. Counsel, Gilbert C. Miller, Atty., Fellow, and Paul Gonson, Sol., Securities and Exchange Commission, Washington, D.C., with him on the brief), for respondent.

Before HOLLOWAY, BARRETT and MILLER,* Circuit Judges.

JACK R. MILLER, Circuit Judge.

This appeal is from an order of the Securities and Exchange Commission ("SEC") affirming an amended decision of the Board of Governors of the National Association of Securities Dealers ("NASD") that Wall

* Of the United States Court of Appeals for the   Federal Circuit, sitting by designation.

Street West, Inc. ("WSW"), a member, and Theodore V. Abbruzzese, a financial principal and President of WSW, had violated Article III, Sections 1 and 27(b) of the Association's Rules of Fair Practice [1] by failing to adequately supervise James C. Cohig, a financial principal and WSW Denver, Colorado, area branch manager in that—

> From September 1978, when the branch office opened, until about the end of January 1979, Cohig used office stationery, for all correspondence, that the NASD found misleading and a cause of potential customer confusion. The letterhead contained the words "Wall Street West" in the upper Left hand corner. However, underneath, in a much bolder typeface, appeared the name "Cohig and Company, Inc." And underneath that, in smaller type, appeared the word "Investments." [2]

and, further, that WSW and Mr. Abbruzzese were fined, jointly and severally, in the amount of $1,000 and assessed costs of proceedings before the Board of $431.59; also, that the Board's decision would serve as a Letter of Caution to them. We affirm.

A critical factor in this case is that under WSW policy, branch office managers were responsible for the lease of the premises and all equipment and furniture installed therein. Accordingly, Cohig and Company, Inc., organized by Mr. Cohig, became merely the lessee of the branch office premises and purchased or leased all of the office furniture and equipment. This obviously underlies the SEC's finding, following an independent review of the record, that the branch office stationery, which Mr. Abbruzzese admittedly saw before it was used but raised no objection to, was clearly misleading, "particularly in view of the fact that the word 'Investments' appeared under the name 'Cohig and Company, Inc.' " [3]

Appellants, citing *Steadman v. SEC*, 450 U.S. 91 *see* pp. 96, 98, 101–02, 101 S.Ct. 999 see pp. 1005, 1006, 1007–08, 67 L.Ed.2d 69 (1981), correctly point out that the standard of proof to be applied in determining whether there has been a violation of securities rules is the preponderance of the evidence and that "a sanction must rest on a *minimum quantity* of evidence." However, they argue that this standard has not been satisfied by the "ambiguous" evidence in this case, asserting that: (1) the basis for a finding of a violation of the NASD rules was mere "supposition" or "guessing"; (2) there is no evidence that anyone was ever misled by the branch office stationery; (3) all other documentation relating to securities transactions was in the name of "Wall Street West"; and (4) there was no intent to mislead the public (use of the stationery in question being discontinued immediately upon Mr. Abbruzzese being informed that NASD objected to it).

---

1. Article III, Section 1, provides:
   > A member, in the conduct of his business, shall observe high standards of commercial honor and just and equitable principles of trade.

   Section 27(b) provides, in pertinent part:
   > Final responsibility for proper supervision shall rest with the member. . . .

2. In its decision (subsequently appealed to NASD's Board of Governors), the NASD District Business Conduct Committee had found that Cohig and Company, Inc., had a separate Denver telephone yellow pages listing under "Investment Securities" and a further listing of "Cohig & Co., associated with Wall Street West, Inc." under the "Stock and Bond Brokers" classification. This alleged transgression was set aside by the SEC for lack of evidence that Mr. Abbruzzese could have prevented it under the existing circumstances. The Committee also had found that, in a Denver Post newspaper article on various brokers' views of the economy, Mr. Cohig was identified as affiliated with Cohig and Company, Inc., rather than with WSW. The NASD Board of Governors set aside this alleged transgression on the basis that Mr. Abbruzzese was not involved in the interview. Mr. Cohig was also the subject of the original complaint of the District Business Conduct Committee, which rendered a separate decision with respect to him based on its acceptance of his Offer of Settlement.

3. The SEC noted that the NASD Board of Governors, in its amended decision, found that, since the Cohig firm's name was in larger type than Wall Street West, "customers could easily misconstrue the situation and conclude that Cohig was the broker-dealer and Wall Street West merely an advertising slogan [since there was no indication that it was a corporation.]"

■ We are satisfied that the stationery "from its nature considered alone"[4] conveys the impression that Cohig and Company, Inc., was a firm engaged in buying and selling securities—a broker-dealer, rather than Wall Street West, Inc., an impression not comporting with reality which appellants, in the exercise of their supervisory duties, failed to prevent. That there is no evidence that anyone was actually misled by the stationery in question is legally irrelevant. *Berko v. SEC,* 316 F.2d 137, 143 (2d Cir.1963); *Hughes v. SEC,* 174 F.2d 969, 974 (D.C.Cir.1949). *See SEC v. Capital Gains Research Bureau, Inc.,* 375 U.S. 180, 192, 195, 84 S.Ct. 275, 283, 284, 11 L.Ed.2d 237 (1963); *Hamilton Waters & Co.,* 42 S.E.C. 784, 790 (1965). As has been well-stated by SEC,

> [O]ur proceedings are instituted to protect the public interest. They are not brought to redress private wrongs. That makes it unnecessary to show reliance on such representations or that the customer was in fact misled. [Footnotes omitted.]

*Richard C. Spangler, Inc.,* 8 S.E.C. 238, 244 (1976).

■ As to appellants' argument that all confirmations, monthly statements, and other documents used by the branch office bore the name "Wall Street West," we agree with SEC that this does not negate the misleading character of the stationery in question, because "those who received letters from the branch office could well have been confused as to the brokerage firm with which they were dealing." As SEC puts it in its brief, "the point is that nowhere did the stationery indicate that Wall Street West was the registered broker-dealer and that Cohig and Company, Inc., was not." With respect to appellants' argument that there was no intent to violate NASD's rules, "[t]here is no requirement that the actor also be aware that he is violating one of the Rules or Acts." *Tager v. SEC,* 344 F.2d 5, 8 (2d Cir.1965) and citations. The SEC has declared:

> While the lack of an intention to violate these requirements may be considered on

the issue of what penalty is appropriate in the public interest, such lack of intent does not negate the NASD's findings of violation of its rules based on the failure to comply with the regulations.

*Cortland Investing Corp.,* 42 S.E.C. 709, 715 (1965).

Finally, appellants contend that the sanctions imposed are not justified, taking into account their previous unblemished records. This court, as well as others, has made clear that the determination of sanctions has been assigned by Congress to SEC rather than to the courts, and the exercise by the Commission of its discretionary powers will not be disturbed by the courts except for cogent reasons. *Associated Securities Corp. v. SEC,* 293 F.2d 738, 741 (10th Cir.1961). More recently, this court declared:

> In applying sanctions for violations of Securities Exchange statutes or rules and regulations of the SEC the Commission has broad discretion and in the absence of clear abuse of that discretion the court will not substitute its views as to what the punishment shall be for such violation.

*Don D. Anderson & Co. v. SEC,* 423 F.2d 813, 817 (10th Cir.1970). In *Tager v. SEC, supra,* 344 F.2d at 8, the Second Circuit answered a similar argument to that of appellants as follows:

> Tager urges in mitigation that he had never been involved in a questionable transaction previously; that he cooperated with the Commission in this and in other investigation; that no showing was made of public losses as a result of his first underwriting. While these factors might have warranted a lighter sanction, they did not require it.

In holding that the Commission did not abuse its discretion, we note the SEC's statement that "we are unable to conclude that the light sanctions that the Association imposed are excessive or oppressive."

The order of the Commission is affirmed.

4. *Gilbert v. Nixon,* 429 F.2d 348, 356 (10th   Cir.1970).