**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Donna Marie SUNRHODES**
**Defendant–Appellant.**

No. 85–1127.

United States Court of Appeals,
Tenth Circuit.

Oct. 20, 1987.

Denise Nau, Cheyenne, Wyo., for defendant-appellant.

David A. Kern, Asst. U.S. Atty. (Richard Stacy, U.S. Atty., Cheyenne, Wyo., was also on the brief), for plaintiff-appellee.

Before HOLLOWAY, Chief Judge, LOGAN, Circuit Judge, and BROWN, District Judge.[*]

HOLLOWAY, Chief Judge.

Defendant–Appellant Donna Marie Sunrhodes appeals that portion of the judgment and commitment order which orders her to pay $6260 in restitution to the Indian Heath Services Division of the Department of Health and Human Services pursuant to the restitution provisions of the Victim and

[*] The Honorable Wesley E. Brown, of the United States District Court for the District of Kansas, sitting by designation.

Witness Protection Act of 1982, 18 U.S.C. §§ 3579–3580. We affirm.

I

This appeal arises out of an incident that occurred on or about August 17, 1983, in which Virgil Thomas Monroe, an Indian, was shot in the chest and seriously injured by defendant, also an Indian. Defendant does not dispute that she shot Mr. Monroe. Mr. Monroe was taken to a local hospital, where he underwent surgery to repair his wound. The medical practitioners who provided their services to Mr. Monroe presented their statements to the Indian Health Services Division of the Department of Health and Human Services (IHS) for payment. The IHS paid a total of $6,260.75 to these providers.

On October 26, 1984, an indictment was returned charging defendant with one count of assault resulting in serious bodily injury to an Indian in Indian country, in violation of 18 U.S.C. §§ 113(f) and 1153, an offense punishable by ten years' imprisonment and a $10,000 fine. At her arraignment defendant pled guilty to a violation of 18 U.S.C. §§ 113(c) and 1153, assault on an Indian in Indian country with intent to do bodily harm, punishable by a sentence of five years' imprisonment and a $1,000 fine.

On December 31, 1984, there was served and filed a notice of a restitution and sentencing hearing, originally set for January 9, 1985. Defendant received this notice on January 2, 1985. I R. 18a. On January 3, defendant's attorney filed a motion for discovery, asking the Government to afford her access to medical records, bills and any other documents relevant to the victim's injuries, and that the court order this discovery to be provided at no cost to defendant because she was indigent. Defense counsel also moved for a 30 day continuance, asserting that defendant had an obligation to prepare facts as to her ability to pay, develop the facts relating to restitution, and explore the amount of restitution in dispute prior to the hearing, and claiming that seven days was not sufficient time for her to meet these burdens.

On January 4 the trial judge denied the motions. He stated that the case was referred for a presentence investigation, that the probation officer had prepared a full and complete record of expenses which was available to the defendant, and that the court normally does not allow defendants to engage in discovery in criminal cases after entry of a guilty plea. I R. 24–25.

The restitution hearing took place on January 11 before the magistrate. Defendant's attorney renewed her motion for a continuance and asked that the Government be barred from seeking restitution on the ground she attempted to contact the U.S. Attorney's office to develop the facts prior to the sentencing hearing but was unsuccessful because that office would not return her calls. The prosecution attorney responded that the probation office file was available so that defense counsel could see it to verify its accuracy, and that, in fact, she had done so. The magistrate reserved ruling on the motion until after he had heard the evidence. He denied it at the end of the hearing.

Defense counsel objected at the hearing to the Government's proffer of the telephone testimony of one of its witnesses, Mr. Kinsey, Contract Health Specialist with IHS, on Confrontation Clause and hearsay grounds. The magistrate overruled the objection, stating that the Government could have presented the witness' testimony through hearsay, but that defendant had been allowed to cross-examine the witness over the telephone, fully protecting the defendant's rights.

Mr. Kinsey testified by telephone as to the amount that the IHS had paid on behalf of Mr. Monroe. He said that a physicians' group in Riverton, Wyoming, near Mr. Monroe's reservation, had presented a bill for $32.00 for treatment of thoracic pain pursuant to a gunshot wound to the chest, that the hospital to which Mr. Monroe had gone after the incident had presented a bill for $110.90 for emergency room services on August 28, 1983 and a second bill for $5,347.84 for his hospital stay from August 17 to August 25, and for treatment of his gunshot wound, and that the surgeon who

removed the bullet presented a bill for $770.00.

On cross-examination, Kinsey testified that the IHS pays health care providers directly to furnish services to eligible Indians and never pays Indians directly, that Mr. Monroe had never designated IHS to pay for his costs, and that, since he had never communicated directly with Mr. Monroe, he had no direct knowlege of Mr. Monroe's injuries. He said that all of the charges were "as a direct result of the injury" but stated he was not a physician and could not testify about whether the itemized amounts involved were unnecessary or unrelated to the gunshot wound. III R. 20, 22, 25. He testified that each of the providers has a contract with IHS and certifies under penalty of perjury that the charges are "customary and necessary and reasonable." He testified that, although IHS does spot checks to determine if charges are necessary, IHS did not check the charges involved here. III R. 23. Mr. Kinsey testified that although the providers in Mr. Monroe's case had made the appropriate certifications of reasonableness and necessity, this did not indicate that these injuries were received only as a result of the gunshot wound. III R. 27.

The Government offered a letter from Mr. Kinsey to Mr. Mills of the Probation and Parole Office summarizing these expenses. Mr. Mills testified that he supervised the presentence report in this case. He learned through his investigation that Mr. Monroe had received treatment for his gunshot wound from various medical providers in the Riverton area, that IHS had paid for this treatment, and that the letter from Mr. Kinsey listed these expenses. Mills further testified that Monroe told him that he had received treatment from the IHS for his gunshot wound and had completely recovered at no expense to himself. He said that any money IHS would recover for treatment, as restitution for example, would go back into the IHS budget or to the Government's general fund. III R. 34.

Mr. Mills also testified about Ms. Sunrhodes' financial condition. She had very few assets and liabilities. Her assets included some personal property and an interest in some tribal land on the reservation. She had three children but was not obligated to pay for their upkeep or even her own food and shelter because her mother had legal custody of her children and she lived with her mother. Finally, he testified that Ms. Sunrhodes received a per capita check but that at the time of his interview with her in November 1984, she was receiving only $98 of this because $136 was being used to make payments on a loan she had taken out. The remaining balance on the loan was $280 at the time he interviewed her and it would probably have been paid off by the time of the hearing. He thought Ms. Sunrhodes could probably afford a $136 deduction from her per capita payment and that to pay off $6,260.75 would require 48 payments of approximately this amount. III R. 34–38.

Ms. Sunrhodes testified that she had been living with her mother at the time of her interview with Mr. Mills, but was now living on her own in Riverton. Her per capita payment had been reduced from $230 to $200 effective January 1, 1985 and in January she only received $66 out of which she paid as much of her food and clothing expense as she could. Her $66 was not enough to pay for her food and clothing and she had to borrow the difference from relatives. She could not afford an attorney when she was arrested for the shooting of Mr. Monroe and she was being represented by a court-appointed attorney. She said her per capita changes every year.

## II

The Magistrate entered his order recommending restitution on the basis of these findings.

Virgil Monroe was a victim of a gunshot wound to his chest on August 17, 1984 which required extensive medical treatment. Various medical services were provided to him beginning on August 17. Two physicians at Western Family Care Clinic rendered emergency room treatment for services in the amount of $32. The Riverton Memorial Hospital rendered emergency services in the amount of $110.90 and inpa-

tient services from August 17 to August 25, 1984 in the amount of $5,347.85. Dr. Brohm provided Mr. Monroe surgical and other treatment services in the amount of $770. The total cost of medical services provided to Monroe was $6,260.75.

The itemized medical services were paid by the Department of Health and Human Services, Public Health Services, Health Services Administration, Wind River Service Unit, which provides free health services to all eligible Indians residing on the Wind River Indian Reservation. Monroe suffered no loss of income or other monetary loss.

The evidence was found to have established that all of the above charges for medical service were reasonable and necessary and related solely to Monroe's injuries sustained from the gunshot wound. The Indian Health Services (IHS) operates on a budget of some four million dollars and it was from this that Mr. Monroe's medical services were paid for. By so doing IHS lost over $6000 from its budget, which is not now available for rendering free health services to other eligible Indians on the Reservation and restitution was found necessary and proper to restore these funds to the United States Treasury or the agency. The magistrate therefore found there was sound basis in fact to impose and enforce restitution.

It was found that defendant receives a per capita income which was just decreased from $235 to $200 per month. At the time the defendant was receiving $235 per month and there was a deduction of $136 being made from her per capita income for a loan of approximately $1500. Defendant was able to sustain herself on the remaining balance of her per capita income because she lived and was living at the time of the order with relatives, without expense except for some contribution for food. Defendant was therefore found to have an ability to pay restitution and the magistrate concluded that restitution of $100 per month for approximately 68 months was reasonable. The district judge adopted the recommendation by an order included in his judgment and commitment order, ordering restitution in the amount of $6,260.75 to IHS in the amount of $100 per month.

Defendant appeals the restitution order.

### III

On appeal, defendant contends: (1) the court denied her due process by affording only seven days' notice of the restitution hearing and denying an opportunity to conduct discovery before the hearing; (2) the magistrate violated defendant's confrontation rights and the hearsay rule when he allowed Kinsey to testify over the telephone; (3) the hearing violated this court's requirement in *United States v. Watchman,* 749 F.2d 616 (10th Cir.1984) that the Government meet with her to develop the facts relating to sentencing prior to the restitution hearing; (4) the magistrate erred in relying on the testimony of Kinsey to establish the relationship between the injuries inflicted by defendant and the medical services to Mr. Monroe, the cost and reasonableness of those services and what services were rendered because he was not competent to testify about these facts; and (5) the magistrate failed to consider defendant's indigency when he determined the amount of restitution.

### A.

Defendant's first two allegations of error concern her due process and confrontation rights under the Fifth and Sixth Amendments and the hearsay rule.

The Fifth Amendment Due Process Clause applies to sentencing proceedings. *Townsend v. Burke,* 334 U.S. 736, 741, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690 (1948); *accord Gardner v. Florida,* 430 U.S. 349, 358, 97 S.Ct. 1197, 1205, 51 L.Ed.2d 393 (1977) (plurality opinion). Because restitution hearings are part of the sentencing process, *United States v. Richard,* 738 F.2d 1120, 1122 (10th Cir.1984), the Due Process Clause applies to restitution hearings. In determining the content of defendant's constitutional protections in this restitution hearing under the Victim and Witness Protection Act, "we consider the private and governmental interests at

stake, the risk of an erroneous deprivation of the private interests through existing procedures, and the probable value of additional or substitute procedures." *United States v. Keith,* 754 F.2d 1388, 1392 (9th Cir.), *cert. denied,* 474 U.S. 829, 106 S.Ct. 93, 88 L.Ed.2d 76 (1985), *citing Mathews v. Eldridge,* 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976).

Due process insures that a defendant will not be sentenced on the basis of "misinformation of a constitutional magnitude," *United States v. Tucker,* 404 U.S. 443, 447, 92 S.Ct. 589, 592, 30 L.Ed.2d 592 (1972); *accord Townsend v. Burke, supra,* 334 U.S. at 741, 68 S.Ct. at 1255 (sentencing of defendant on the basis of "materially false" information "which the prisoner had no opportunity to correct by services which counsel would provide" violates due process), and we "recognize a due process right to be sentenced only on information which is accurate." *United States v. Jones,* 640 F.2d 284, 286 (10th Cir.1981). *See also United States v. Fulbright,* 804 F.2d 847, 853 (5th Cir.1986) ("As a matter of due process, factual matters may be considered as a basis for sentence only if they have some minimal indicium of reliability"); *United States ex rel Villa v. Fairman,* 810 F.2d 715, 718 (7th Cir.1987) (A defendant "is entitled to procedures good enough to produce accurate decisions over the run of cases; the Constitution does not insure perfect accuracy"). In restitution hearings under the VWPA, "due process assures the defendant he will be given adequate notice and an opportunity to contest the facts relied upon to support his criminal penalty." *United States v. Satterfield,* 743 F.2d 827, 840 (11th Cir.1984), *cert. denied after remand,* 471 U.S. 1117, 105 S.Ct. 2362, 86 L.Ed.2d 262 (1985). *See also, United States v. Palma,* 760 F.2d 475, 477 (3d Cir.1985); *United States v. Florence,* 741 F.2d 1066, 1069 (8th Cir.1984); *United States v. Keith, supra,* 754 F.2d at 1392.

We have noted that an order of restitution under §§ 3579 and 3580 is a part of the sentencing process. *See United States v. Richard,* 738 F.2d 1120, 1122 (10th Cir. 1984); 18 U.S.C. § 3579(a)(1) (1982). However we have stressed the importance of gathering the facts for the purpose of making an order of restitution complete and accurate. *United States v. Watchman,* 749 F.2d 616, 618 (10th Cir.1984). And we have stated that the burden in fact gathering is placed on the Government by the statute on behalf of the victim, and on the defendant or his attorney on behalf of the defendant. *Id.* In *Watchman* the order of restitution was set aside and a remand was ordered because the fact finding as to the victim was deficient, and the Government had not discharged its burden in that respect. *Id.* at 619. We have pointed out that the Victim and Witness Protection Act specifies that any dispute as to the amount or type of restitution shall be resolved by the court by the preponderance of the evidence. *United States v. Hill,* 798 F.2d 402, 405 (10th Cir.1986).

We now consider the claims of error in light of these principles.

### B.

Defendant contends she only had seven days' notice of the restitution hearing and that she was deprived of an opportunity for fact gathering by the denial of her motion for discovery. She also claims that the magistrate placed on her the burden of showing that the medical services afforded Mr. Monroe were not reasonable and necessary. Appellant's Brief at 6–7.

We do not agree that the magistrate improperly placed the burden of proof as to the cost of medical services. He only observed that it had been "aptly demonstrated" that these items were reasonable and necessary and that there had been no proof to show they were not. III R. 52. We do not feel the burden of proof was improperly placed or that the magistrate failed to follow the provision in the statute that any dispute as to the proper amount or type of restitution should be resolved by the preponderance of the evidence. 18 U.S.C. § 3580(d).

■ The assertion that there was inadequate notice before the hearing is not persuasive. On December 31, 1984 a notice was filed of a "A Full And Complete Hear-

ing On Restitution and Sentencing," which was to be held on January 9. Defendant received this notice on January 2, 1985. I R. 18(a). A motion for discovery was filed by defendant's attorney on January 3, requesting access to medical records, bills and other documents, and counsel also moved for a 30–day continuance to develop facts relating to restitution. On January 4 the district judge denied the motions and the restitution hearing took place on January 11. In this order the judge noted that "the probation officer has a full and complete record of all expenses which will be considered by the court at the time of sentencing of the defendant; said information is available to counsel for the defendant." I R. 24–25.

We find no abuse of discretion in the rulings on the motions and the denial of the continuance. The notice was not inadequate and there was no error in the magistrate's holding the hearing on restitution on January 11. We do not think the district judge impaired the defendant's due process rights to notice and an opportunity to contest the facts on which the restitution order was based when he noticed the hearing at the time he did or refused to order further discovery.

### C.

Defendant's primary constitutional claim is that in the restitution proceeding her right to confrontation was violated when Mr. Kinsey, the contract health specialist at the Indian Health Center, was allowed to testify by a telephone interrogation participated in by the magistrate and counsel for the Government and the defendant. As a corollary issue, the defendant also claims that the admission of Kinsey's testimony violated the hearsay rule.

"The Confrontation Clause provides two types of protections for a criminal defendant: The right physically to face those who testify against him, and the right to conduct cross-examination." *Pennsylvania v. Richie*, —— U.S. ——, ——, 107 S.Ct. 989, 998, 94 L.Ed.2d 40 (1987). Confrontation (1) insures that the witness will give his statements under oath—thus impressing

him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to cross-examination, the "greatest legal engine ever invented for the discovery of truth;" and (3) permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility. *California v. Green*, 399 U.S. 149, 158, 90 S.Ct. 1930, 1935, 26 L.Ed.2d 489 (1970). The question posed is whether a restitution proceeding in these circumstances requires the observance of all the demands of the Confrontation Clause.

The Supreme Court's holdings in *Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), and *Williams v. Oklahoma*, 358 U.S. 576, 79 S.Ct. 421, 3 L.Ed.2d 516 (1959), are instructive. It seems clear from these decisions that the requirements mandated in a criminal trial as to confrontation and cross-examination are not applicable at sentencing proceedings. The right to confrontation is basically a trial right. *Mancusi v. Stubbs*, 408 U.S. 204, 211, 92 S.Ct. 2308, 2312, 33 L.Ed.2d 293 (1972). This leads us to conclude that a defendant at a restitution hearing has no absolute right to confront witnesses whose information is made available to the court. As noted, an order for restitution under §§ 3579 and 3580 is a part of the sentencing process. *United States v. Richard*, 738 F.2d at 1122. In light of the Supreme Court's holdings and the procedures laid out in the Victim and Witness Protection Act, we hold that the full demands of the Confrontation Clause do not apply to such a restitution proceeding. *United States v. Tucker, supra*, and *Townsend v. Burke, supra*, nevertheless require that a defendant in such a criminal proceeding is entitled to a sentence based on accurate information, and we feel that this is the touchstone of a proper restitution proceeding. *See United States v. Watchman*, 749 F.2d at 618.

We are satisfied that the demands of an accurate and fair proceeding and proper factual determinations were satis-

fied here. It is true that there was no showing of unavailability of Mr. Kinsey and his evidence was received without his presence at the hearing. Nevertheless he was placed under oath during the interrogation by telephone and the questioning was heard simultaneously by the magistrate and counsel for both parties. Kinsey was subjected to immediate cross-examination by defense counsel after he was questioned by the prosecuting attorney.

Furthermore, Mr. Kinsey had no personal loss at stake in the restitution hearing. He pointed out that he was reading from the diagnosis furnished on payment forms to his office concerning the treatment of the gunshot wound, the massive hemothorax, fracture of the right eleventh rib, right middle lobe and right lower lobe with infiltrates that would be in the lung, and the performance of two blood transfusions, and the removal of the bullet with suture closures. III R. 14. There was no dispute as to the fact that the defendant shot Mr. Monroe. IV R. 13. In addition, Mr. Kinsey stated that the providers have a contract in each instance, and by their signatures on their statements they certify under penalty of perjury that the charges are customary, necessary and reasonable. III R. at 23. Further, an earlier December 19, 1984, letter from Kinsey to the Probation Officer, Mr. Mills, in our record itemized the expenses totalling $6,260.75. I R. 27.

It is true that there were concessions made on cross-examination, such as the fact that Kinsey was not a physician; and that while he doubted it, he could not say whether there were services involved that were not absolutely necessary to treat the gunshot wound. III R. at 22. Nevertheless, because of Mr. Kinsey's position as the health care specialist and all the additional circumstances outlined, we feel the evidence bore sufficient indicia of reliability, *Ohio v. Roberts*, 448 U.S. 56 at 73, 100 S.Ct. 2531, 2542, 65 L.Ed.2d 597 (1980), and that the concern for an accurate order of

restitution was met. *See United States v. Watchman*, 749 F.2d at 618.

Thus we find no merit in the Confrontation Clause argument of defendant.

■ As noted, defendant further argues that there was a violation of the hearsay rule by the admission of the testimony of Kinsey. We feel that the admission of his statements in this proceeding was not error.[1] Fed.R.Evid. 1101(d)(3) excludes the application of the Federal Rules of Evidence at sentencing. *United States v. Ruminer*, 786 F.2d 381, 385 (10th Cir.1986). Hearsay information may therefore be considered at a sentencing hearing. *United States v. Cardinal*, 782 F.2d 34, 37 (6th Cir.), *cert. denied*, — U.S. —, 106 S.Ct. 2282, 90 L.Ed.2d 724 (1986); *United States v. Gonzalez*, 576 F.Supp. 334, 335 (D.Ore. 1983) (hearsay information concerning other offenses may be considered at sentencing where there was substantial other evidence to support the accuracy of the hearsay information). Thus Kinsey's testimony was not excludable on hearsay grounds, there being substantial indicia of reliability of Kinsey's statements, as noted above. *Gonzalez*, 576 F.Supp. at 335.

We hold that the admission of the testimony of Mr. Kinsey taken during the telephone interrogation was not a violation of defendant's rights under the Confrontation Clause, nor a violation of the hearsay rule.

### D.

■ Defendant further argues that Mr. Kinsey was not competent to testify about the relationship between the gunshot wound and Mr. Monroe's injuries, the cost and reasonableness of the services IHS provided, and the actual services it did provide.

As noted, Mr. Kinsey testified concerning his position at the agency as the contract health specialist at the Indian Health Center. He said that he saw to payment of

---

1. We feel that Kinsey's statements in the telephone interrogation come within the definition of hearsay in Fed.R.Evid. 801, the statements being made by the declarant "other than ... while testifying at the trial or hearing." Rule

801(c). There was no showing of unavailability of Kinsey. *See* 4 J. Weinstein & M. Berger, *Weinstein's Evidence Manuel*, ¶ 800[01] at 800-10,–11 (1987).

all bills for services purchased by the agency. III R. at 11. We earlier detailed Mr. Kinsey's description of the injuries and treatment while he was reading from the diagnosis furnished on the payment form. III R. at 14. The figures totalled by Mr. Kinsey were questioned and the total amount finally verified. III R. at 15–16. In view of the position held by Mr. Kinsey, and his familiarity with the physician's forms and the certificate made under penalty of perjury by the providers that their charges were customary, necessary and reasonable, III R. at 23, we find no error in the magistrate's ruling accepting Mr. Kinsey as qualified to testify and in relying on his testimony in making the restitution recommendation, which the district judge adopted.

### E.

█ Defendant next argues that the Government failed to cooperate with her in gathering facts or negotiating a stipulation of agreed facts before the restitution hearing, citing *United States v. Watchman, supra.* Appellant's Brief at 7–8.

We find no merit in the contention. The district judge noted in his order denying the motions for a continuance and for discovery that the probation officer had a full and complete record of all expenses which would be considered by the court at the time of sentencing, and that the information was available to counsel for the defendant. I R. 24–25. This order of January 4 was entered a week prior to the January 11, 1985 restitution hearing. Defendant's counsel claims that her telephone calls to the United States Attorney's office were not returned when she sought discovery, but there is no showing or claim that counsel was refused the opportunity to examine the record of expenses at the probation office referred to in the January 4 order of the district judge.

We feel there is no showing of prejudice to the defendant in the preparations for the restitution hearing and conclude there was no error by the magistrate or the district judge in connection with the fair and orderly preparation for the hearing.

### F.

Defendant contends further that although her counsel requested an opportunity to brief the issue of the entitlement of the Indian Health Service to restitution, such an opportunity was never afforded by the magistrate or the district judge. She points out that according to Mr. Kinsey's testimony, eligible Indians on the reservation do not contribute money to the IHS, that an Indian receiving services from IHS does not have to show that he has no other means of medical service available, and that there is no direct compensation to the injured party from IHS.

The information was apparent or available that restitution was contemplated to IHS for its expenditures on the medical services rendered to Mr. Monroe. Defense Counsel's January 3 motion for a continuance referred specifically to the question whether repayment to IHS was "restitution." I R. 22. Defense counsel was permitted to argue at the conclusion of the restitution hearing, and she raised the question whether money paid by the Indian Health Services was a subject for restitution under the statute. III R. at 49. Defense counsel did state this was an issue that should be more carefully briefed and she argued that there was not sufficient evidence to meet the burden of showing that money paid to the Indian Health Service would be permissible restitution under the statute. Nevertheless, counsel obviously had the opportunity to present argument on the facts and the law and authorities on this issue of restitution awarded to IHS.

█ Furthermore, we agree that the Indian Health Service is a victim within the meaning of the Victim and Witness Protection Act. The statute authorizes a court to order a defendant to make restitution to "any victim of the offense." 18 U.S.C. § 3579(a)(1) (1982). The statute does not define the term "victim," but courts have granted restitution to "nonhuman entities such as the government and corporate institutions." *United States v. Ruffen,* 780

F.2d 1493, 1496 (9th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 462, 93 L.Ed.2d 407 (1986). For a victim to receive restitution, the Act does not require that the defendant be convicted on a count pertaining to that victim, but only "that the victim must have suffered a loss as a result of the offense charged." *United States v. Kail,* 804 F.2d 441, 449 (8th Cir.1986). Moreover the legislative history also supports an award of restitution to an institution in the position of the Indian Health Service.[2] The term "victim" has been held to include an insurer of an automobile burned during a robbery. *United States v. Durham,* 755 F.2d 511, 513 (6th Cir.1985).

In view of the terms of the statute, its history and interpretation by the courts, and the factual circumstances before us, we hold that there was no error in ordering restitution to the Indian Health Service. The loss occurred as a result of the defendant's offense and restitution to IHS is proper under the terms of the statute. *See United States v. Richard,* 738 F.2d at 1123.

### G.

 Lastly, defendant maintains that the magistrate and the district judge did not consider her indigency in framing the restitution award as the statute requires.

The statute mandates only that the court consider indigency in framing an order for restitution; indigency is not a bar to restitution. *See* 18 U.S.C. § 3580(a) (1982) ("The court ... shall consider the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate."); *United States v. Purther,* 823 F.2d 965, 970 (6th Cir.1987); *United States v.*

*House,* 808 F.2d 508, 510 (7th Cir.1986); *United States v. Mounts,* 793 F.2d 125, 129 (6th Cir.) (restitution order affirmed which ordered restitution for damages to business property and victim's automobile but denied restitution to insurance carrier on consideration of defendant's indigency and earning ability and needs of his family), *cert. denied,* —— U.S. ——, 107 S.Ct. 673, 93 L.Ed.2d 724 (1986); *United States v. Atkinson,* 788 F.2d 900, 904 (2d Cir.1986) (rejecting argument that because defendant is indigent order of restitution would be abuse of discretion, but remanding for district court to reconsider order of restitution by weighing all factors listed in § 3580(a); *United States v. Fountain,* 768 F.2d 790, 802 (7th Cir.), *cert. denied sub nom., Silverstein v. United States,* 475 U.S. 1124, 106 S.Ct. 1647, 90 L.Ed.2d 191 (1985). Defendant stresses the fact that she was found to be indigent as a basis for appointment of counsel. Nevertheless, the defendant's very limited income and property and her debts were developed in her testimony. The magistrate discussed these resources, liabilities and the needs of the defendant and made his recommendation for the restitution award, which the district judge adopted.

While the payments required are a serious withdrawal from the small monthly payments to the defendant, we find no abuse of discretion or legal error in the restitution award.

### IV.

No error having been demonstrated the restitution order is AFFIRMED.

---

**2.** In discussing § 3579, approved October 12, 1982, 96 Stat. 1253, the Senate Report on the Act notes:

> Typically, sentences in both federal and state courts are less likely to require restitution if the victim was insured. The common practice of not allowing insurance companies to be subrogated to the rights of insured victims means that some offenders are being relieved of their debts. It also means that insurance companies and the insurance buying public are being asked to pay off the offender's debt. S.Rep. No. 97–532 (97th Cong., 2d Sess.) at 31, *reprinted in* 1982 U.S.Code, Cong. & Admin. News 2515, 2537.