25 F.3d 1056
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Robert E. GIBBS, Petitioner,
v.
SECURITIES AND EXCHANGE COMMISSION, Respondent.
 No. 93-9555.
 United States Court of Appeals,
Tenth Circuit.
 May 13, 1994.
 ORDER AND JUDGMENT[1]
 
 1
 Before BRORBY and EBEL, Circuit Judges, and KANE,** District Judge.
 
 
 2
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this petition for review. See Fed.R.App.P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 3
 Robert Gibbs petitions this court for review of the decision of the Securities and Exchange Commission (SEC), affirming the decision of the National Association of Securities Dealers (NASD) to sanction him for engaging in unauthorized transactions in a customer's account. The NASD found that Mr. Gibbs, a registered representative of The Stuart James Company (Stuart James), made three unauthorized trades in the account of customer Norman Crank, in violation of Article III, Section 1 of the NASD's Rules of Fair Practice. In addition, the original complaint also charged Mr.Gibbs with making unauthorized transactions in several other accounts and making unsuitable recommendations to another customer.
 
 
 4
 On petition for review by this court, Mr. Gibbs states his issues as (1) "[w]hether findings made by the Securities and Exchange Commission were supported by substantial evidence in the record taken as a whole[;]" (2) "[w]hether the action taken by the Securities and Exchange Commission was arbitrary and capricious[;]" and (3) "[w]hether Appellant Gibbs was afforded a fair hearing, in accordance with the Rules of the National Association of Securities Dealers, Inc., the Rules of the Securities and Exchange Commission, the requirement of the Administrative Procedure Act, 5 U.S.C. Section 551, et seq., and the due process clause of the Fifth Amendment to the Constitution of the United States."[2] Petitioner's Br. at 2.
 
 I. Background
 
 5
 In October 1990, a subcommittee of the District Business Conduct Committee (DBCC) of NASD conducted a hearing on charges that Mr. Gibbs had engaged in unauthorized trading in customer accounts and had made unsuitable recommendations to a customer. At the Denver hearing, Norman Crank, testifying by telephone from Florida, stated that Mr. Gibbs had sold 700 Immucell Corporation warrants and 640 Universal Medical Buildings Limited warrants from Mr. Crank's account, using the proceeds to purchase 90,000 shares of Nationwide Resources Corporation. Mr. Crank testified that these trades were not authorized, and that it was not the first time that an agent of Stuart James had made unauthorized trades in his account.[3] In rebuttal, Mr. Gibbs, testifying in person, stated that Mr. Crank had authorized the transactions, but because the name of the company he recommended to Mr. Crank was Baseball Card Society which, in the interim, was purchased by National Resources, Mr. Crank became confused. On cross-examination, Mr.Crank continued to maintain that he had never heard of either company. Neither party was placed under oath.
 
 
 6
 Following the hearing, the subcommittee recommended a decision which was subsequently reviewed by the entire DBCC. Following review, the DBCC concluded that Mr. Gibbs had engaged in unauthorized transactions in Mr. Crank's account and in the accounts of four other customers. R. Vol. 1 at 791. The DBCC censured Mr. Gibbs, imposed a $15,000 fine, charged him with the costs of the proceedings, and suspended him from association with any member of NASD for thirty days. Id.
 
 
 7
 Mr. Gibbs appealed these sanctions to NASD's National Business Conduct Committee (NBCC) which conducted a de novo review of the findings of the DBCC. The NBCC concluded that the DBCC's assessment of credibility in favor of Mr. Crank was correct, but overturned the findings of unauthorized transactions in the accounts of the other four customers as supported only by hearsay. Id. at 892. Accordingly, the NBCC significantly reduced the sanctions to censure and a fine of $3,000, setting aside the suspension of NASD association and the assessment of hearing costs. Id.
 
 
 8
 Mr. Gibbs appealed this decision to the SEC. Following de novo review, the SEC affirmed the findings of the DBCC and the NBCC that the transactions in Mr. Crank's account were unauthorized. The SEC subsequently granted Mr. Gibbs a stay of the imposition of sanctions pending this petition for review.
 
 II.Insufficient Evidence
 
 9
 "[T]he standard of proof to be applied in determining whether there has been a violation of securities rules is the preponderance of the evidence and [ ] a sanction must rest on a minimum quantity of evidence." Wall Street West, Inc. v. SEC, 718 F.2d 973, 974 (10th Cir.1983)(internal quotation and emphasis omitted). The SEC has broad discretion in sanctioning for violations of Securities Exchange statutes, rules, or regulations. Id. at 975. We will not disturb the SEC's determination of sanctions absent a clear abuse of discretion. Id.
 
 
 10
 Mr. Gibbs initially argues that the SEC's decision to affirm the findings of the NASD was clouded because the SEC based its decision on the record of proceedings and did not have an opportunity to evaluate the demeanor of the witnesses. Mr. Gibbs claims the SEC "did nothing more than defer to the determination made by the NASD." Petitioner's Br. at 17.
 
 
 11
 The SEC may review a final disciplinary sanction imposed by the NASD "after notice and opportunity for hearing (which hearing may consist solely of consideration of the record before the [NASD] and opportunity for presentation of supporting reasons to affirm, modify, or set aside the sanction)--" 78s(e)(1). While acknowledging that the SEC is allowed to base its decision exclusively on the NASD record, Mr. Gibbs maintains that in these circumstances it was improper for the SEC to do so. Petitioner's Br. at 12. We do not agree. The SEC order affirming the imposition of sanctions indicates a thorough review of the NASD decision. Accordingly, we conclude that further hearing was not indicated or necessary.
 
 
 12
 Mr. Gibbs repeatedly insists that the SEC did not consider the evidence presented in his favor. However, Mr. Gibbs fails to point this court specifically to the evidence in the record that the SEC allegedly ignored.[4] Federal Rule of Appellate Procedure28 requires that an appellant provide this court with appropriate references to the record. Fed. R.App. P. 28(e); see also SEC v. Thomas, 965 F.2d 825, 827 (10th Cir.1992)("It is obligatory that an appellant, claiming error by the district court as to factual determinations, provide this court with the essential references to the record to carry his burden of proving error."). This is no less applicable in a review of an administrative agency decision.
 
 
 13
 It is not this court's policy to "sift through" the record looking for support for an appellant's argument, especially when an appellant is represented by counsel. Id. However, notwithstanding the lack of direction in Mr. Gibbs' brief and his averments to the contrary, our review of the record reveals substantial evidence to support the SEC's decision.
 
 III. Due Process
 
 14
 Next, Mr. Gibbs contends that his Fifth Amendment due process rights were violated because Mr. Crank was examined at the DBCC hearing by telephone, thus denying him a face-to-face confrontation. Mr. Gibbs argues that because he was not accorded face-to-face confrontation with Mr. Crank, the hearing panel was unable to observe Mr. Crank's demeanor, thus rendering its decision in favor of his credibility unreliable.
 
 
 15
 "The fundamental requirement of due process is the opportunity to be heard at 'a meaningful time and in a meaningful manner.' " Mathews v. Eldridge, 424 U.S. 319, 333 (1976)(quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). "[S]ubstantial weight must be given to the good-faith judgments" of agency decision makers to determine which procedures are appropriate to insure a fair hearing. Id. at 349.
 
 
 16
 Although it is clear that Fifth Amendment due process rights are applicable to agency adjudications, Mr. Gibbs has not cited any authority which states that these rights include the right to face-to-face confrontation of witnesses. In addition, because the NASD does not have subpoena powers, to require the physical presence of witnesses could seriously restrict and burden this self-regulatory agency. See Hannah v. Larche, 363 U.S. 420, 442 (1960)(holding that the burden on the proceeding should be considered when deciding what due process attaches in a specific administrative proceeding).
 
 
 17
 The SEC, upon review of the record, concluded that Mr. Gibbs had been afforded a full opportunity to cross-examine Mr. Crank, and that he was afforded all the process due. We agree.[5]
 
 
 18
 Insofar as Mr. Gibbs' argument approaches a claim of Sixth Amendment right to face-to-face confrontation, the law is clear that this constitutional right applies only in criminal proceedings. See, e.g., SEC v. Jerry T. O'Brien, Inc., 467 U.S. 735, 742 (1984)(holding confrontation clause inapplicable to administrative investigation until initiation of criminal proceedings); Hannah, 363 U.S. at 440 n. 16 (holding that Sixth Amendment is exclusively limited to criminal proceedings). In addition, this court held telephone testimony to be constitutionally permissible in a criminal restitution hearing where the witness was subject to immediate cross-examination by defense counsel. United States v. Sunrhodes, 831 F.2d 1537, 1543-44 (10th Cir.1987). Accordingly, Mr. Gibbs' attempt to apply a criminal process to the NASD proceedings also fails.
 
 
 19
 In a final attempt to persuade, Mr. Gibbs asserts that "[i]ronically, the Commission, in its decision in this very case, questioned how a credibility determination could be made by a tribunal before which a witness did not appear." Petitioner's Br. at 13. The statement Mr. Gibbs refers to was in reference to the NASD's dismissal of another charge against him in which his testimony was given weight over the statements of the customer who did not testify in any form at the hearing. R. Vol. 2 at 959 n. 8. The SEC questioned the ability of the NASD to make a credibility determination "since the customer did not testify before it." Id. This statement, removed from context, is neither applicable nor relevant to the issue of the constitutional propriety of Mr. Crank's telephone testimony.
 
 IV. Appearance of Impropriety
 
 20
 Next, Mr. Gibbs asserts that the DBCC panel was biased because one of its members, James Couglin, had previously testified as an expert witness against Mr. Gibbs' employer, Stuart James, in an NASD arbitration.[6] Before the DBCC hearing, Mr.Gibbs submitted a motion objecting to Mr. Couglin sitting on the DBCC panel and requesting that he be disqualified.[7] R. Vol. 2 at 952a-952d. In his motion, Gibbs asserted that on July 11, 1989, Mr.Couglin had testified as an expert witness against Stuart James in an NASD arbitration. Id. at 952b. Mr. Gibbs alleges that, in his arbitration report, Mr. Couglin took a position strongly against what Mr. Couglin perceived to be the "gross and continuing course of misconduct" of Stuart James.[8] Id. Mr. Gibbs asserted that due to Mr. Couglin's "state of mind" regarding Stuart James, and Mr. Gibbs' ongoing association with Stuart James, Mr. Couglin would be unable to provide him with a fair hearing. Id. at 952c.
 
 
 21
 In addressing the issue on appeal, the NBCC found that Mr.Gibbs had failed to establish "a sufficient factual basis for the disqualification of this individual pursuant to Article X, Section 1 of the NASD Code of Procedure." R. Vol. 1 at 889. The NBCC further concluded that Mr. Gibbs failed to show that he suffered any prejudice due to the fact that the final decision was rendered by the entire committee, not the subcommittee. Id. at 890. It found that the appearance of prejudice was further weakened by its independent de novo review of the proceedings. Id.
 
 
 22
 On final review, the SEC held that Mr. Gibbs' "unsubstantiated assertions of bias are an insufficient basis to invalidate NASD action." R. Vol. 2 at 958 n. 6. The SEC concluded that Mr. Gibbs had not established that Mr. Couglin had any bias or interest which would affect his impartiality in this case, or that he had actually acted in a biased manner. R. Vol. 2 at 959. The SEC also opined that Mr. Gibbs' claim of bias was diluted by the de novo reviews of the NBCC and the SEC. Id.
 
 
 23
 Stuart James was not involved in this case, except in the peripheral role as Mr. Gibbs' employer at the time the unauthorized trades were made, and Mr. Gibbs had no involvement with the prior arbitration involving Stuart James. Mr. Gibbs cannot argue, nor has he attempted to argue, that Mr. Couglin was directly biased against him personally. He only contends that Mr. Couglin, in his capacity as an expert witness, allegedly testified that Stuart James had engaged in misconduct, that he therefore is biased against Stuart James, and that this bias transfers to Mr.Gibbs as a Stuart James employee.
 
 
 24
 The Supreme Court has articulated the general rule that " 'officers acting in a judicial or quasi-judicial capacity are disqualified by their interest in the controversy to be decided.' " Concrete Pipe & Prod. v. Construction Laborers Pension Trust, 113 S.Ct. 2264, 2277 (1993)(quoting Tumey v. Ohio, 273 U.S. 510, 522 (1927)). The Supreme Court stated that "the appearance of justice" is required where "a private party is given statutory authority to adjudicate a dispute." 113 S.Ct. at 2277. This court has held that " 'a substantial showing of personal bias is required to disqualify a[n] [administrative agency] hearing officer or to obtain a ruling that the hearing is unfair.' " Roach v. National Transp. Safety Bd., 804 F.2d 1147, 1160 (10th Cir.1986)(quoting Roberts v. Morton, 549 F.2d 158, 164 (10th Cir.1976), cert. denied, 434 U.S. 834 (1977)), cert. denied, 486 U.S. 1006 (1988).
 
 
 25
 Accordingly, the mere fact of Mr. Couglin's involvement in the previous arbitration, without further indication that this involvement created some conflicting interest which would taint his ability to render an unbiased decision as to the charges against Mr. Gibbs, does not establish the bias of which Mr. Gibbs complains. Mr. Gibbs' very weak, conclusory claim of bias, coupled with the fact that the record does not contain Mr.Couglin's arbitration report or any other factual predicate for the claim, defeat his argument that the initial hearing was biased.[9]
 
 V. Rules of Evidence
 
 26
 Finally, Mr. Gibbs argues that the DBCC's admission into evidence of a settlement offer of Stuart James to Mr. Crank "raise[d] an inference of guilt, [and] deprived Mr. Gibbs of a fair hearing." Petitioner's Br. at 21. On petition for review, Mr. Gibbs concentrates his argument on the one settlement letter in the record dated February 2, 1989, wherein Stuart James offered to cancel the trades that Mr. Crank alleged were unauthorized. R. Vol. 1 at 617. The letter does not refer to Mr. Gibbs. Although admission of the letter as an exhibit was objected to by Mr. Gibbs' counsel, id. at 131, the basis for the objection is unclear.
 
 
 27
 The SEC disposed of the issue, stating that "NASD's proceedings are informal and are not bound by the rules of evidence used in courts of law," id. at 959, and that the NASD Code of Procedure specifically only prohibits admission of a settlement offered "to the DBCC or the Board of Governors, not a reference to civil settlements between a respondent and a former client," id. at 959 n. 7. This court concurs with the SEC that administrative agencies are not bound by the rules of evidence which govern jury trials. Gallagher v. National Transp. Safety Bd., 953 F.2d 1214, 1218 (10th Cir.1992). "The standard for admission of evidence in an agency proceeding is found in the Administrative Procedures Act and allows '[a]ny oral or documentary evidence' except 'irrelevant, immaterial, or unduly repetitious evidence.' " Id. (quoting 5 U.S.C. 556(d)). We conclude that the settlement letter was properly admitted by the DBCC, and reject Mr. Gibbs' claim that this admission deprived him of a fair hearing.
 
 VI. Conclusion
 
 28
 In conclusion, we hold that Mr. Gibbs was afforded a full, fair, and constitutionally sufficient opportunity to defend himself against the NASD's charges of misconduct. The SEC's decision, affirming the NASD's imposition of sanctions, was supported by substantial evidence, and was not an abuse of discretion. Therefore, the order of the Securities and Exchange Commission is AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 **
 Honorable John L. Kane, Jr., Senior District Judge, United States District Court for the District of Colorado, sitting by designation
 
 
 [2]
 As a self-regulatory organization, the NASD must comply with the provisions of the Securities Exchange Act, its own rules, and the rules of the SEC and Municipal Securities Rulemaking Board. 15 U.S.C. 78s(g)(1)
 
 
 [3]
 The record contains a letter from Mr. Crank's attorney noting that in the past, Robert Rada, an agent of Stuart James previously handling Mr. Crank's account, had engaged in unauthorized trades in Mr. Crank's account. R. Vol. 1 at 610. The letter referred to an earlier letter directing Stuart James "to immediately cease and desist any further trading without the consent of Mr. Crank." Id. The letter requested that Stuart James pay $4,750 in settlement for Mr. Crank's losses. Id
 
 
 [4]
 In his reply brief, Mr. Gibbs repeatedly refers to "Record Document No. 74." The record provided to this court for review does not contain a document numbered "74."
 
 
 [5]
 The record indicates that Mr. Gibbs appeared at the hearing with two attorneys, and that one of his attorneys cross-examined Mr. Crank at length. We also note, as further indication that the testimony by telephone was adequate, that Mr. Gibbs did not lodge an objection to conducting this cross-examination by telephone
 
 
 [6]
 The alleged violations charged against Mr. Gibbs occurred between 1984 and 1989. During this period of time, he was employed by Stuart James and continued as the branch manager for Stuart James at the time of the hearing
 
 
 [7]
 The record does not contain any indication that the DBCC ever considered or acted on Mr. Gibbs' motion. According to the transcript, he did not renew his request for Mr. Couglin's disqualification at the hearing. The motion was not addressed in the DBCC's written decision. The SEC also noted that its review of Mr. Gibbs' claim of bias could have been facilitated by an explanation from the DBCC as to the reasons why disqualification of Mr. Couglin was not necessary. R. Vol. 2 at 958 n. 5
 
 
 [8]
 Gibbs' motion states that Couglin's report is attached, but the report is not included in the record
 
 
 [9]
 We note that the SEC's reliance on subsequent de novo reviews to dilute any bias appears to be improper under Concrete Pipe & Products, 113 S.Ct. at 2277 (holding an appeal and de novo trial do not cure the failure to provide a neutral and detached decision maker). Because we determine Mr. Gibbs' claim of bias to be meritless, the SEC's reliance, even if inappropriate, is irrelevant