USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-1842 UNITED STATES, Plaintiff, Appellee, v. CARMEN RUIZ-DEL VALLE, A/K/A MARIA SOTO, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Jaime Pieras, Jr., U.S. District Judge] ___________________ ____________________ Before Torruella, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ ____________________ Lydia Lizarribar-Masini for appellant. _______________________ Miguel A. Pereira, Assistant United States Attorney, with whom __________________ Charles E. Fitzwilliam, United States Attorney and Jose A. Quiles- _______________________ ________________ Espinosa, Senior Litigation Counsel, were on brief for appellee. ________ ____________________ November 3, 1993 ____________________ BOWNES, Senior Circuit Judge. After executing a BOWNES, Senior Circuit Judge. _____________________ plea agreement, defendant-appellant, Carmen Ruiz del Valle (Ruiz), pled guilty to counts two, five and six of a super- seding indictment on January 22, 1992. Counts two and five charged that defendant, along with her common law husband, Arturo Reyes Diaz (Reyes), and Orlando Col n Santiago, with aiding and abetting each other, and with possessing with intent to distribute 5,152 and 3,566 grams of heroin in violation of 21 U.S.C. 841(a)(1) and 18 U.S.C. 2. Count six charged that defendant and Reyes used and carried fire- arms during and in relation to a drug trafficking crime in violation of 18 U.S.C. 924(c)(1). This count carries a minimum mandatory sentence of five years. There are two issues: whether defendant should be allowed to withdraw her guilty plea to the firearms charge (count six); and whether the district court erred in sentenc- ing defendant on the other two counts by adding two points to her base offense level because she played a leadership role in the offense. THE FACTS THE FACTS _________ In order to understand the first issue the facts must be related in detail. In the late afternoon of August 25, 1991, a suitcase arrived at the International Airport in San Juan. It had been delivered by an American Airlines flight from the Dominican Republic. Because the suitcase had -2- 2 arrived from a foreign country, it was deposited in the U.S. Customs area for inspection. The inspecting Customs Officer noted that the suitcase left Kennedy Airport in New York City on August 23 destined for San Juan. By mistake the suitcase was not unloaded at San Juan and was taken to the carrier's final destination, the Dominican Republic. The suitcase was re- turned to San Juan, its original destination, on August 25. The suitcase had an American Airlines claim tag with the name of Maria Soto, and there was a passenger identification tag bearing the same name. Because the suitcase had a strong chemical odor, the Customs Inspector opened it and found seven packages that field-tested positive for heroin. The total amount of heroin weighed 5,152.1 grams. Special Agent Rodolfo Salcedo of the Customs Service was notified. Agent Salcedo immediately tried to find the owner of the suitcase. He ascertained that an airport baggage handler, Wilfredo Ortiz, had tried to retrieve the suitcase, but was told that only the owner could do so. Ortiz was interviewed by Agent Salcedo and DEA agents. He gave them essentially the following information. On August 25, defen- dant, accompanied by Reyes and a small child, went to Ortiz's home. Defendant identified Reyes as her husband. Defendant told Ortiz that an American Airlines employee, whom she had phoned, told her that the suitcase had arrived. She offered -3- 3 Ortiz $15,000 if he helped her retrieve the suitcase from the Customs area. Defendant then drove Ortiz to the airport, gave him five dollars, and told him that after obtaining the suitcase he was to take a taxi to the Laguna Gardens parking lot where she and Reyes would be waiting for him. As already noted, Ortiz was unable to obtain the suitcase. Defendant drove Ortiz back to his residence. During the drive defendant asked Ortiz when his next working day was. Ortiz told her it was Tuesday, August 27. Defen- dant told Ortiz that she would look for him on that date. Also, during the drive back to Ortiz's home, Reyes stated that the suitcase contained "seven big eggs" wrapped in plastic containing drugs. In a subsequent conversation, presumably by telephone, Ortiz told defendant that he knew an American Airlines employee who could retrieve the suitcase for a fee. Defendant said that she would pay Ortiz $15,000, and the American Airlines employee $10,000. Ortiz then asked defendant what was in the suitcase, and defendant told him it contained heroin. On August 28, DEA Agent Victor Ayala, acting as an undercover agent, was telephonically introduced to defendant as the American Airlines employee who could retrieve the suitcase. During the recorded telephone conversation, defen- dant agreed to pay Ayala $10,000 for delivering the suitcase. Ayala inquired about the contents of the suitcase and was -4- 4 told that it contained heroin. Defendant and Ayala agreed to meet at the San Juan Airport so she could give him her bag- gage claim ticket. In the early afternoon of August 28, defendant and Reyes came to the airport. Agent Ayala, who was accompanied by Ortiz, was given a baggage claim ticket with the name "Soto/ Maria." Defendant told Ayala not to worry about his money, that it was secure. Ayala told defendant that she would be called as soon as he obtained the suitcase. About three hours later Ayala called defendant and told her that he had the suitcase. This telephone call was recorded. Defen- dant talked to Ortiz and told him that her husband and anoth- er person would pick up the suitcase and deliver the money. Defendant also talked to Ayala and told him that if he was a cop, she would chop his head off. About two and a half hours later there was another recorded telephone call between Ayala and defendant. At the start of the phone call defendant told Ayala that the money man had just arrived and to call back in two minutes. This was done, and the second phone call was duly recorded. It was agreed that defendant would pay Ayala the $10,000 and pick up the suitcase the next day about 10:30 a.m. The exchange of money for the suitcase was to take place in front of Wendy's Restaurant at the airport. -5- 5 The next day, at about 10:45 a.m., the other two defendants named in the indictment, Reyes and Col n, pulled up and parked in front of Wendy's as agreed. Reyes was driving. Col n got out of the car and gave Agent Ayala a bag in which there was a twelve-can container of Pepsi Cola with six cans of Pepsi and $10,000 in cash. Col n told Agent Ayala to put the suitcase on the back seat of the car. After this was done, Col n was arrested. Reyes tried to flee by driving away. After a three minute chase, he was stopped and arrested. During his attempted flight, Reyes threw the suitcase out of the window of the car. The next day, August 29, at about 7:35 p.m., Cus- toms and DEA agents, acting pursuant to a duly authorized warrant, searched the condominium apartment held in the name of defendant and jointly occupied by her and Reyes. No one was in the apartment at the time of the search. Found in the apartment and seized were 3,566 grams of heroin, assorted drug paraphernalia, including scales and three weapons with the ammunition necessary for their use. The firearms were a twelve-gauge shotgun, altered to make it a hand-held weapon, a Winchester rifle, model 94, and a pistol. PROCEDURAL HISTORY PROCEDURAL HISTORY __________________ As already noted, defendant pled guilty on Janu- ary 22, 1992. She was sentenced on June 15, 1992, and filed a notice of appeal from the sentencing on June 19. -6- 6 Unlike defendant Ruiz, her husband, Reyes, opted for a bench trial. For reasons that will become apparent, the record of that trial is part of the record in this case. Reyes was tried on August 20, 1992, on counts one, two, five, six, seven, and eight. Count one charged conspiracy with intent to distribute multi-kilo quantities of heroin; counts two and five charged possession with intent to distribute the same multi-kilo amounts of heroin. Counts six, seven, and eight were firearms counts charging violations of 18 U.S.C. 924(c)(1). These counts carried minimum mandatory sentences of five years. Reyes did not plead guilty to counts one, two, and five, but neither did he contest them. His entire defense was concentrated on the firearms counts. On this he was successful. The same district court judge who accepted defendant's guilty pleas presided at the bench trial of her husband. Because it is important to our resolution of this case we quote the pertinent portion of the district court's rulings and findings in the case against Reyes: It is clear from the cases which have just been summarized that the objec- tive of 924(c)(1) is to penalize drug transactions which could easily escalate into violence. Such is not the situation at hand. It may be true that the fire- arms were located at the apartment for the purpose of protecting a drug business which was admittedly conducted in the apartment, but the mere presence of fire- arms is not sufficient for a conviction, for there must be a nexus between the -7- 7 firearm and the facilitation of the tran- saction at issue. The defendant did not arrange to meet the undercover agent at the apart- ment; they met at the airport. At the time of the search the apartment was vacant and no drug business was being conducted. There are other firearm statutes whose purpose is to deter the possession of firearms without a permit. Section 924(c)(1) was not drafted for that pur- pose. Even though the defendant has also been charged with a conspiracy to dis- tribute a controlled substance, the exis- tence of such a conspiracy is not suffi- cient to support a conviction for a fire- arm which was not proven to be part of the commission of the felony. United ______ States v. Pietri, 683 F.2d 877, Fifth _________________ Circuit 1982 (sufficient evidence to support convictions where conspirators met with undercover agent with revolver concealed in pant leg). Wherefore, in view of the foregoing, the Court hereby finds that there is insufficient evidence for convictions as to Counts Six, Seven and Eight, which are the firearms counts. United States v. Reyes Diaz, 797 F. Supp. 96, 97 (D. Puerto ______________ __________ Rico 1992). On October 9, 1992, defendant Ruiz moved in the district court to withdraw her guilty plea on count six, the firearms charge. The district court quite properly ruled that it lacked jurisdiction to entertain such a motion. Fed. R. Crim. P. 32(d) provides, that, after sentencing, "a plea may be set aside only on direct appeal or by motion under 28 -8- 8 U.S.C. 2255." Because in her notice of appeal defendant Ruiz questioned the evidentiary basis for her plea of guilty to the firearms count, the issue whether she should be al- lowed to withdraw her guilty plea to that count is properly before us, as the government concedes.1 ANALYSIS ANALYSIS ________ We start with the Rule 11 plea hearing. Although defendant has not directly attacked the manner in which the plea hearing was conducted, an examination of the plea hear- ing is logically the first step in the review process. This is so even if a claim of non-compliance with Rule 11 was not presented to the trial court. United States v. Parra-Ibanez, _____________ ____________ 936 F.2d 588, 593 (1st Cir. 1991). In United States v. ______________ Padin-Torres, 988 F.2d 280 (1st Cir. 1993) we noted, citing ____________ to Parra-Ibanez: "Rule 11 objections, so far as they affect ____________ the 'knowing' character of the plea are treated with extra solicitude." See also United States v. Mateo, 950 F.2d 44, ___ ____ _____________ _____ 45 (1st Cir. 1991) (a Rule 11 challenge will not be consid- ered waived since Rule 11 protects not only rights of the defendant but also the "'fairness, integrity [and] public reputation of judicial proceedings.'"). In United States v. _____________ Daniels, 821 F.2d 76, 81 (1st Cir. 1987), we noted that, _______ ____________________ 1. The government's statement of issue one is: I. Whether Appellant's Request to Withdraw Her Voluntary Plea of Guilty to Count Six of the Superseding Indictment Should be Granted. -9- 9 because the "fairness, integrity [and] public reputation of judicial proceedings" is at stake in Rule 11 proceedings, appellate courts have sometimes considered Rule 11 violations sua sponte. ___ ______ There are certain basic duties that a district court must fulfill in conducting a Rule 11 hearing. Under the Rule, the court must address the defendant personally and determine that the defendant understands the nature of the charges to which the plea is offered. Fed. R. Crim. P. 11(c)(1). The Supreme Court in commenting on the require- ments of Rule 11 has stated: Thus, in addition to directing the judge to inquire into the defendant's understanding of the nature of the charge and the consequences of his plea, Rule 11 also requires the judge to satisfy him- self that there is a factual basis for the plea. The judge must determine "that the conduct which the defendant admits constitutes the offense charged in the indictment or information or an offense included therein to which the defendant has pleaded guilty." Requiring this examination of the relation between the law and the acts the defendant admits having committed is designed to "protect a defendant who is in the position of pleading voluntarily with an understand- ing of the nature of the charge but with- out realizing that his conduct does not actually fall within the charge." McCarthy v. United States, 394 U.S. 459, 467 (1969) (quoting ________ _____________ Fed. R. Crim. P. 11, advisory committee's note). Our cases stress that the district court must make sure that the plea is voluntary and that the defendant under- -10- 10 stands the charges against her. In Mack v. United States, ____ _____________ 635 F.2d 20, 25 (1st Cir. 1980), we stated: "Insuring that the plea is truly voluntary means that the court must resolve _____ all doubts and questions arising about the guilty plea." It is axiomatic that the procedures followed by the district court in accepting a plea are crucial in later determining whether the plea was truly understanding and voluntary. United States v. Kobrosky, 711 F.2d 449, 455 (1st Cir. 1983). _____________ ________ In United States v. Allard, 926 F.2d 1237, 1245 (1st Cir. ______________ ______ 1991), we pointed out: "The plain language of the rule [Fed. R. Crim. P. 11(c)] requires the court both to inform the defendant of the nature of the charge and make a determina- tion that he understands it." In reviewing the record of a change of plea hearing, we bear in mind that there is no "talismanic test" for determining compliance with the re- quirements of the rule. "We must look at the circumstances of the case to determine whether the district court informed the defendant of the charges, and determined that the defen- dant understood them." United States v. Zorrilla, 982 F.2d _____________ ________ 28, 30 (1st Cir. 1992), cert. denied, 113 S. Ct. 1665 (1993). _____ ______ We find the change of plea hearing as to the fire- arms count, which is the only one at issue, defective for two reasons. First, the charge was not read to defendant, nor was it explained to her by the court. It is true that both defendant and her attorney assured the court that she under- -11- 11 stood all of the charges against her. But this does not excuse the judge from personally explaining the charges to the defendant and then questioning her to be sure that she understands them. This was especially so here because in its outline of the evidence the government alluded only once to the firearms count. The prosecutor stated: "Subsequently, a search of the defendant Ruiz Del Valle's apartment produced three weapons and additional heroin in the amount of 3,566 grams." This is hardly sufficient to explain the firearms count. The second reason we think the plea hearing violat- ed Rule 11 was that the court was, or should have been, put on notice by a statement by the defendant that she either did not understand the firearms charge or felt that the presence of a weapon in her apartment was not a crime. The statement made by defendant was: "I knew that there was a weapon in the room, but I did not buy that weapon and I did not use it." Beyond ascertaining that the word "room" meant defen- dant's apartment, no further inquiry was made. The court's failure to inquire of defendant and the prosecutor about the firearms charge was of special significance here because the court later decided on facts that were identical that there was insufficient evidence for conviction of defendant's husband on the firearms charges. In fact, the defendant's statement that she did not buy the weapon or use it, should -12- 12 have, under the court's rationale in the husband's case, prompted the court to refuse to accept defendant's plea on the firearms count. We wish to make it clear that we are not passing on the legal or factual correctness of the district court's opinion. For purposes of this appeal we consider the opinion only because it reflects the understanding of the judge as to whether the evidence was sufficient for a conviction on the firearms count. He found that it was not. His understanding of the requirements of 18 U.S.C. 924(c)(1) was that "the mere presence of firearms is not sufficient for a conviction, for there must be a nexus between the firearm and the facilitation of the transaction at issue." The court also found it material that "[A]t the time of the search the apartment was vacant and no drug business was being conduct- ed." Finally, the court held: Even though the defendant has also been charged with a conspiracy to distribute a controlled substance, the existence of such a conspiracy is not sufficient to support a conviction for a firearm which was not proven to be part of the commis- sion of the felony. Our review of the record in defendant's case and the trial transcript in her husband's case convinces us that as far as the firearms counts are concerned both defendant and her husband stood on equal footing. Both of them occu- pied the condominium apartment, although it was in defen- -13- 13 dant's name. There was no evidence as to who owned the weapons found in the apartment. Reyes did not testify at his bench trial. We emphasize that the judge who accepted defen- dant's guilty pleas was the same one who later found her husband not guilty on the firearms counts. We can only conclude that if defendant had gone to trial, as her husband did, that she would also have been found not guilty. The question for the appellate court on a direct appeal of a post-sentence request for a plea withdrawal is whether there has been a miscarriage of justice. United ______ States v. Allard, 926 F.2d at 1243. Or to put another cast ______ ______ on it, was there "an omission inconsistent with the rudimen- tary demands of fair procedure"? United States v. Japa, 994 _____________ ____ F.2d 899, 904 (1st Cir. 1993). See also Hill v. United ___ ____ ____ ______ States, 368 U.S. 424, 428 (1962). ______ We conclude that defendant should be allowed to withdraw her plea for two reasons: the court's failure to follow the requirements of Rule 11 violated the demands of fair procedure; and the court's subsequent findings and rulings in the husband's case makes the imposition of the minimum mandatory sentence of five years for the firearms count a miscarriage of justice in defendant's case. This holding is based on the unique facts of this case. We are not suggesting that where one defendant has pled guilty and the other defendant goes to trial and is acquit- -14- 14 ted, that the pleading defendant has a basis for withdrawing her plea. In this case, there probably would have been no motion by defendant to withdraw her plea were it not for the district court's decision on the firearms charges in her husband's case. The reason, however, for allowing defendant to withdraw her plea was not the court's decision in her husband's case; the reason was the district court's failure to follow the mandate of Rule 11 in accepting defendant's plea to the firearms count. We must warn defendant, as we did her counsel at oral argument, that the withdrawal of her guilty plea on the firearms count is not a guarantee of acquittal on that count. All that defendant is entitled to is a new trial on the firearms count. New facts may emerge and different legal rulings may be made. We specifically point out that under 18 U.S.C. 924(c)(1) if the firearm is a "short-barreled rifle" or a "short-barreled shotgun," the minimum mandatory sentence is ten years. We do not know whether the rifle or shotgun found in defendant's apartment fall within this category and only bring this to defendant's attention. LEADERSHIP ROLE DETERMINATION LEADERSHIP ROLE DETERMINATION _____________________________ The other issue is a challenge to the court's finding that defendant played a leadership role in the thwar- ted attempt to possess and distribute heroin. Because "role in the offense" determinations are fact-bound, the standard -15- 15 of review is clear error. United States v. Rodriguez Alvara- _____________ _________________ do, 985 F.2d 15, 19 (1st Cir. 1993); United States v. __ ______________ Schultz, 970 F.2d 960, 963-64 (1st Cir. 1992), cert. denied, _______ _____ ______ 113 S. Ct. 1020 (1993); United States v. Sostre, 967 F.2d _____________ ______ 728, 732 (1st Cir. 1992). We find that the district court did not commit clear error in finding that defendant was the leader in the scheme. The evidence from which such a finding could be made can be summarized as follows: defendant was the one who contacted Ortiz in an attempt to retrieve the suitcase; the suitcase claim ticket was in the name of Maria Soto, an obvious alias; defendant was the one who offered to pay Ortiz $15,000 for retrieving the suitcase from the Cus- toms area; and defendant was the one who negotiated with undercover Agent Ayala about recovering the suitcase. The leadership role finding of the district court and the upwards adjustment to the base offense is affirmed. CONCLUSION CONCLUSION __________ 1. Defendant may withdraw her guilty plea on the firearms count. 2. The sentence of the defendant on the drug counts is affirmed. -16- 16