**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 14 1997**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

v.

DONALD KEITH BLACKWELL,

Defendant-Appellee.

No. 96-8110
(D.C. No. 94-CR-105-B)
(D. Wyo.)

---

**Appeal from the United States District Court**
**for the District of Wyoming**
**(D.C. No. 94-CR-105-B)**

---

Patrick J. Crank, Assistant United States Attorney (David D. Freudenthal, United States Attorney, with him on the brief), Casper, Wyoming, for Plaintiff-Appellant.

Steven A. Wuthrich, Sandy, Utah, for Defendant-Appellee.

---

Before **BALDOCK, BRORBY** and **BRISCOE**, Circuit Judges.

---

**BRORBY**, Circuit Judge.

---

The government appeals the district court's October 17, 1996 order, entered pursuant to 28 U.S.C. § 2255 (1994) (amended 1996), that vacated criminal

defendant Donald Keith Blackwell's guilty plea and his previously imposed sentence. *See United States v. Blackwell*, 944 F. Supp. 864 (D. Wyo. 1996). The district court primarily premised its order on the disparity between Mr. Blackwell's sentence and that of a co-conspirator, Shelly Cecala. *See id.* We reverse and remand.

## I. FACTS

On September 20, 1994, the grand jury for the District of Wyoming indicted Mr. Blackwell for conspiracy to possess with intent to distribute and conspiracy to distribute cocaine, in violation of 21 U.S.C. §§ 841 and 846 (1994), and possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841. On February 2, 1995, Mr. Blackwell pled guilty before the District Court for the District of Wyoming to the charge of conspiracy to possess with intent to distribute and to distribute eight ounces of cocaine. Based on the terms of Mr. Blackwell's plea agreement, the government filed a motion to dismiss the remaining counts against Mr. Blackwell and, to reward Mr. Blackwell's cooperation with the government, a motion to grant Mr. Blackwell a three-level departure, thus reducing his sentencing guideline range from twenty-four to thirty months imprisonment to fifteen to twenty-one months.

On April 24, 1995, the district court granted the government's motions and sentenced Mr. Blackwell to fifteen months incarceration, three years of supervised release, a $1,500 fine, and a $50 special assessment. At the sentencing hearing, the court asked whether Mr. Blackwell would have to be a witness in the prosecution of his supplier and co-conspirator, Shelly Cecala, in the District of Utah. Ms. Cecala's prosecution in Utah was entirely separate from Mr. Blackwell's prosecution in Wyoming. In response, the government replied:

> Honestly, Your Honor, I am filling in for Mr. Crank today and let me have a moment, if I may. (Pause.)
>
> Your Honor, I'm told that she had originally entered into a deal with the federal government in large measure due to Mr. Blackwell's assistance in coming forward and telling us what he knew about her involvement. I guess that deal is currently on the skids and we [*i.e.*, referring to the United States Attorney's Office for the District of Utah] may need to go forward with trial, in which case he will be needed for testimony.
>
> At this point I guess it's fair to tell Your Honor that it's all up in the air.

On June 14, 1995, Mr. Blackwell filed a motion seeking resentencing. He alleged that three days prior to his sentencing, unbeknownst to either his attorneys or the United States Attorney's Office for the District of Wyoming, Ms. Cecala had pled guilty before the United States District Court for the District of Utah to distributing fifty-five ounces of cocaine. Mr. Blackwell further alleged the Utah

district court sentenced Ms. Cecala only to a term of probation,[1] and that in light of the lenient sentence imposed upon Ms. Cecala, who had a greater role in the conspiracy than did he, his sentence was unfair. The Wyoming district court, relying on both its "inherent jurisdiction" to right injustices and Fed. R. Crim. P. 35, vacated Mr. Blackwell's original sentence and resentenced him to three years probation, 250 hours of community service, and a $50 special assessment. The government appealed, and this court held the district court lacked jurisdiction to resentence Mr. Blackwell. *United States v. Blackwell*, 81 F.3d 945, 949 (10th Cir. 1996). Accordingly, we reversed the district court's resentencing of Mr. Blackwell and remanded to that court with instructions to reinstate the original sentence, *id.*, which the district court did on June 19, 1996.

Subsequent to our reversal, Mr. Blackwell filed the motion presently at issue, a Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255.[2] In his *pro se* motion, Mr. Blackwell presented five arguments asserting his sentence was invalid, of which the district court addressed only three. *Blackwell*, 944 F. Supp. at 866-67. The contentions the court addressed were: (1)

---

[1] The government does not contend Mr. Blackwell's allegations regarding Ms. Cecala's plea and sentence of probation are incorrect.

[2] In our prior opinion, we refused to consider Mr. Blackwell's previous petition for resentencing as proceeding pursuant to § 2255. *Blackwell*, 81 F.3d at 947 n.1. We then noted Mr. Blackwell was free to so proceed in the future. *Id.*

the disparity between Mr. Blackwell's and Ms. Cecala's sentences justified relief; (2) the district court was misinformed at Mr. Blackwell's original sentencing as to the status of Ms. Cecala's case in Utah; and (3) Mr. Blackwell did not receive effective assistance of counsel from his trial counsel, Mr. Keith Goody.[3] *Id.* at 867-69. Mr. Blackwell primarily based his ineffective assistance of counsel claim on Mr. Goody's failure to learn, prior to Mr. Blackwell's sentencing, of Ms. Cecala's plea and probation.

On October 11, 1996, the district court held a hearing on Mr. Blackwell's § 2255 motion. At that hearing, the Assistant United States Attorney in charge of Mr. Blackwell's prosecution, Mr. Blackwell, and Mr. Goody all testified. The testimony focused on the Utah prosecution of Ms. Cecala and the adequacy of Mr. Goody's representation of Mr. Blackwell. In regard to the latter matter, the district court asked Mr. Goody whether "*in retrospect*, do you think that on the day [Mr. Blackwell] was sentenced ... you should have contacted Utah just to double-check and find out what sentence [Ms. Cecala] had gotten?" (Emphasis

---

[3] The contentions the district court did not address were (1) misinformation supplied by the government at Mr. Blackwell's original sentencing constituted a *Brady* violation, and (2) reimposing Mr. Blackwell's sentence without credit for time served violated Mr. Blackwell's right against double jeopardy, as did the civil forfeiture of some of Mr. Blackwell's property. *Blackwell*, 944 F. Supp. at 867.

added.)  Mr. Goody responded "Well, *with the benefit of 20/20 hindsight*, I certainly should have checked."  (Emphasis added.)  Notably, the Assistant United States Attorney, Mr. Goody, and the court itself, all expressed amazement that the Utah district court sentenced Ms. Cecala only to probation.[4]

On October 17, 1996, the district court issued the order that is the subject of the instant appeal.  In that order, the district court found all three above noted contentions were valid, and that each justified relief pursuant to 28 U.S.C. § 2255.  *Blackwell*, 944 F. Supp. at 867-69.  It then vacated both Mr. Blackwell's sentence and his guilty plea.  The court then transfered the matter to United States District Judge Downes of the District of Wyoming and gave Mr. Blackwell sixty days to enter a plea before Judge Downes.  *Id.* at 869-70.  In examining the district court's § 2255 ruling, we review the district court's legal rulings *de novo* and its factual findings for clear error.  *United States v. Cox*, 83 F.3d 336, 338 (10th Cir. 1996).

## II.  Jurisdiction

---

[4]  The Assistant United States Attorney stated he was "shocked" to learn Ms. Cecala received probation.  Mr. Goody stated "it never dawned on me under any circumstances that [Ms.] Cecala would ever get probation" and that "it was something ... I wouldn't have anticipated in a million years."  The court, too, stated it was shocked to hear Ms. Cecala received probation.

-6-

As a threshold matter, we address whether we have jurisdiction to hear this appeal. On December 9, 1996, this court issued a show cause order requesting the parties to brief whether the district court's § 2255 order was final and appealable. If the district court's order was a "final decision," we have jurisdiction under 28 U.S.C. § 1291 (1994), which grants appellate courts jurisdiction to review final decisions of district courts. Final decisions are those that "'end[] the litigation on the merits and leave[] nothing for the court to do but execute the judgment.'" *Van Cauwenberghe v. Biard*, 486 U.S. 517, 521-22 (1988) (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)).

After review of the parties' briefs and further consideration of the matter, we conclude the district court's § 2255 order was a final decision over which we have appellate jurisdiction pursuant to § 1291. The district court vacated Mr. Blackwell's sentence and plea and transfered the matter to a different district judge for entry of a new plea. *Blackwell*, 944 F. Supp. at 869-70. Thus, in regards to the § 2255 action, nothing more remained to be done. The district court's disposition was akin to those cases in which a new trial is ordered upon the granting of a § 2255 motion; therefore, the language of the Fifth Circuit is apropos:

> [T]he § 2255 proceedings have ended with an order requiring the
> Government, if it wishes to persist in an effort to punish [the

defendant], to return to Square One and recommence its effort ab initio. A more final termination of the § 2255 action can scarcely be imagined; what possible further purpose could it serve? We have jurisdiction.

*United States v. Dunham Concrete Prods., Inc.*, 501 F.2d 80, 81-82 (5th Cir. 1974), *cert. denied*, 421 U.S. 930 (1975); *accord United States v. Allen*, 613 F.2d 1248, 1250-52 (3d Cir. 1980) (§ 2255 order granting new trial was final and appealable under § 1291). *Cf. Sprosty v. Buchler*, 79 F.3d 635, 645 (7th Cir.) (district court order granting a writ of habeas corpus is final and therefore appealable), *cert. denied*, 117 S. Ct. 150 (1996); *Blazak v. Ricketts*, 971 F.2d 1408, 1410-12 (9th Cir. 1992) (same); *Young v. Herring*, 777 F.2d 198, 201-02 (5th Cir. 1985) (same).

### III. Vacation of Mr. Blackwell's Sentence

### A.

We first address the district court's reliance on the "gross disparity" between Mr. Blackwell's and Ms. Cecala's sentences, as it is this perceived disparity that fundamentally drives the district court's overall disposition. *Blackwell*, 944 F. Supp. at 867-69. The district court noted Ms. Cecala was "much more heavily involved and culpable" than Mr. Blackwell.[5] *Id.* at 869.

---

[5] The court based this finding on Ms. Cecala's status as Mr. Blackwell's supplier, along with her admission of distributing fifty-five ounces of cocaine, in

Relying on the general precept that "similar offenders engaged in similar conduct should be sentenced equivalently," *id.* at 868 (citing *United States v. Massey*, 48 F.3d 1560, 1570 (10th Cir.), *cert. denied*, 115 S. Ct. 2628 (1995)), the court believed that because Mr. Blackwell was less culpable than Ms. Cecala, he should not receive a greater sentence than she. The court stated imposing a fifteen-month prison sentence on Mr. Blackwell, while Ms. Cecala received only probation, "violate[d] basic notions of fairness" and was an "unconscionable result." *Id.* at 869. Accordingly, because "there [was] no explanation that would justify such a disparity," the district court vacated Mr. Blackwell's sentence. *Id.*

We hold the disparity between Mr. Blackwell's and Ms. Cecala's sentences standing alone is not adequate ground for the district court's action. Every other circuit has held disparity between sentences of co-defendants or, as here, co-conspirators, is not a proper basis for sentence reduction beyond the guideline minimum. *United States v. Wogan*, 938 F.2d 1446, 1448-49 (1st Cir.), *cert. denied,* 502 U.S. 969 (1991); *United States v. Joyner*, 924 F.2d 454, 461 (2d Cir. 1991); *United States v. Higgins*, 967 F.2d 841, 845 (3d Cir. 1992); *United States v. Withers*, 100 F.3d 1142, 1149 & n.3 (4th Cir. 1996), *cert. denied*, 117 S. Ct.

---

comparison to the eight ounces underlying Mr. Blackwell's conviction. *See id.* at 866-67, 869.

1282 (1997); *United States v. Pierce*, 893 F.2d 669, 678 (5th Cir. 1990); *United States v. Romano*, 970 F.2d 164, 167 (6th Cir. 1992); *United States v. Dillard*, 43 F.3d 299, 311 (7th Cir. 1994); *United States v. Torres*, 921 F.2d 196, 197 (8th Cir. 1990); *United States v. Taylor*, 991 F.2d 533, 536 (9th Cir.), *cert. denied*, 510 U.S. 858 (1993); *United States v. Chotas*, 968 F.2d 1193, 1197-98 (11th Cir. 1992); *United States v. Williams*, 980 F.2d 1463, 1467 (D.C. Cir. 1992). These circuits note that in enacting the sentencing guidelines Congress sought *national* uniformity in the sentencing of similar defendants for similar federal offenses, and reason that departing from a defendant's guideline range to equalize that defendant's sentence with one imposed on a co-defendant or co-conspirator undermines the congressional objective by "creat[ing] a new and entirely unwarranted disparity between the defendant's sentence and that of all similarly situated defendants throughout the country." *Joyner*, 924 F.2d at 460-61; *accord United States v. Fonville*, 5 F.3d 781, 783 (4th Cir. 1993), *cert. denied*, 511 U.S. 1086 (1994); *Williams*, 980 F.2d at 1467; *Wogan*, 938 F.2d at 1448-49.

We too have generally refused departures from the guideline range premised on disparities between a defendant's sentence and that of his co-defendants or co-conspirators. In *United States v. Jackson*, 950 F.2d 633, 637-38 (10th Cir. 1991), we noted our rejection of attacks on sentences "'based solely on

[a] lesser sentence imposed on [a] codefendant.'"[6] (Quoting *United States v. Trujillo*, 906 F.2d 1456, 1465 (10th Cir.), *cert. denied*, 498 U.S. 962 (1990)). Subsequently, in *United States v. Garza*, 1 F.3d 1098 (10th Cir.), *cert. denied*, 510 U.S. 1018 (1993), we reversed a downward departure premised on the disparity between the guideline ranges of the defendant and a co-defendant/co-conspirator because the disparity was explicable from facts on the record. In so doing, we looked approvingly to cases from the First and Second Circuits that rejected disparity between co-defendant or co-conspirator sentences as a grounds for sentence reduction. *See id.* at 1100-01 (citing *Wogan*, 938 F.2d 1446 (1st Cir.), *cert. denied*, 502 U.S. 969 (1991), and *Joyner*, 924 F.2d 454 (2d Cir. 1991)). *See also United States v. Maden*, 114 F.3d 155, 158-59 (10th Cir. 1997) (reversing a downward departure premised on a disparity between the defendant's sentence and that of a co-defendant because the disparity was explicable by facts in the record), *cert. denied*, ___ S. Ct. ___, 1997 WL 434805 (U.S. Oct. 5, 1997) (No. 97-5356); *United States v. Contreras*, 108 F.3d 1255, 1270-71 (10th Cir.

---

[6] Mr. Blackwell contends the rule announced in *Jackson* is erroneous and, because the co-defendants there were not similarly situated, dicta. We see no error in *Jackson*. Further, the relevant language in *Jackson* is clearly not dicta. We stated "[b]ecause [Mr.] Jackson's claim [of impermissible disparity] is based solely on the lesser sentence imposed on his codefendant ... we must reject [his] claim." 950 F.2d at 637-38. Our subsequent reference to the differing conduct of Mr. Jackson and his co-defendants merely supported our prior statements; it did not render those statements dicta. *See id.* at 638.

1997) (same), *cert. denied*, ___ S. Ct. ___, 1997 WL 336905 (U.S. Oct. 6, 1997) (No. 96-9286).  We have also acknowledged the overriding objective of the sentencing guidelines is the elimination of *nationwide* disparities, rather than disparities between individual cases.  *Id.* at 1271 (citing *Garza*, 1 F.3d at 1100).[7]

In the instant case, the district court did not simply depart downward from the guideline minimum of fifteen months incarceration, it vacated Mr. Blackwell's sentence.  It did so because it knew of "no explanation that would justify [the] disparity" between Mr. Blackwell's guideline mandated minimum sentence and

---

[7]  In *United States v. Sardin*, 921 F.2d 1064, 1066-68 (10th Cir. 1990), because of a significant disparity between the district court's upward departure in sentencing the appellant and the upward departures the court accorded two of the appellant's co-defendants, we reversed for resentencing of the appellant.  The district court's sole basis for departing upward in sentencing the three co-defendants was the quantity of drugs they distributed, which quantity was the same for each defendant.  *Id.* at 1066-67.  Nonetheless, although the basis for the upward departures was identical, the district court departed upward at least four years more in sentencing the appellant than it did in sentencing his co-defendants.  *Id.* at 1066.  Because the district court gave no explanation for this disparity between departures premised on an identical fact, we reversed the district court.  *Id.* at 1067-68.  We stated "[g]iven that the three defendants here were 'similar offenders' engaged in 'similar criminal conduct' with respect to the reason given for their upward departure, they should have received equivalent upward departures."  *Id.* at 1067.

Both the district court and, in his appellate brief, Mr. Blackwell relied on *Sardin*.  However, whereas in *Sardin* the basis for the departure given all three co-defendants was identical, *id.* at 1066-67, here the record does not show Mr. Blackwell and Ms. Cecala to have been similarly situated.  *See infra*.  Accordingly, *Sardin* is inapposite to the instant case.

Ms. Cecala's sentence. *Blackwell*, 944 F. Supp. at 869. However, just because the district court knew of no explanation does not mean there was none.

It appears from the record that the district court's knowledge of the Cecala proceedings in Utah was extremely limited. The prosecution of Ms. Cecala in the District of Utah was entirely separate from Mr. Blackwell's prosecution in Wyoming. At the hearing on Mr. Blackwell's § 2255 motion, the Assistant United States Attorney for the District of Wyoming who prosecuted Mr. Blackwell testified he had no information as to why Ms. Cecala received probation. The record does not contain Ms. Cecala's presentence report, which may or may not include a valid reason for her probation. The district court had no knowledge of what facts may have been admitted in the presentence report. In fact, the only evidence in the record concerning Ms. Cecala's sentence is the transcript of her sentencing hearing, and that transcript provides very limited information.

Thus, the district court lacked the information necessary to determine whether Ms. Cecala's sentence in an entirely separate prosecution warranted a downward departure for Mr. Blackwell. In other words, the court simply could not fully evaluate whether Ms. Cecala and Mr. Blackwell were similarly situated offenders who engaged in similar conduct. In *Garza* we stated "disparate

sentences are allowed where the disparity's explicable by the facts on the record." 1 F.3d at 1101 (citation omitted). We now expand on that statement, holding that where the record is insufficient to show co-defendants or co-conspirators were similarly situated offenders engaged in similar conduct, a disparity between their sentences is not grounds for a downward departure from the minimum guideline range. A contrary presumption would be contrary to the congressional objective underlying the guidelines of obtaining nationwide uniformity in sentencing. *See Wogan*, 938 F.3d at 1448-49. Accordingly, we hold the district court's vacation of Mr. Blackwell's sentence on the grounds of what it termed an "unexplainable disparity" between his sentence and that of Ms. Cecala, when the district court had no knowledge of the factors underlying Ms. Cecala's sentence, was error.

**B.**

We now address the district court's holding the government's failure to inform the court of Ms. Cecala's guilty plea and sentence of probation at Mr. Blackwell's first sentencing hearing, on April 24, 1995, invalidated Mr. Blackwell's original sentence. *Blackwell*, 944 F. Supp. at 867-68. In its order vacating Mr. Blackwell's sentence and plea, the district court stated the misinformation given it by the government regarding the status of Ms. Cecala's

-14-

case resulted in an error of fact so fundamental that it "rendered the ... sentencing proceeding irregular and invalid." *Id.* at 868 (citing *United States v. Addonizio*, 442 U.S. 178, 185-86 (1979)). More specifically, upon a reading of the district court's opinion, it is obvious the court was not particularly troubled by the misinformation itself, but rather by what it believed to be an unjust discrepancy between Ms. Cecala's sentence and that imposed upon Mr. Blackwell. *See id.* "Had the Court been aware of the true status of the Cecala case [*i.e.*, her sentence of probation], there is no doubt [Mr. Blackwell] would have received a more lenient sentence." *Id.*

Under § 2255, federal courts have authority to vacate sentences "imposed in violation of the Constitution or laws of the United States," "in excess of the maximum authorized by law," "that the [sentencing] court was without jurisdiction to impose," "or ... otherwise subject to collateral attack." 28 U.S.C. § 2255. In the instant case, the district court found the asserted "fundamental error of fact" regarding Ms. Cecala's sentence rendered Mr. Blackwell's original sentence subject to collateral attack. *Blackwell*, 944 F. Supp. at 867. Grounds for successful collateral attacks are limited far beyond errors justifying reversal on direct appeal; "the remedy ... does not encompass all claimed errors in conviction and sentencing." *Addonizio*, 442 U.S. at 184. "[A]n error of law [or fact] does

not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Id.* at 185 (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)). Accordingly, misinformation alone cannot constitute a fundamental defect. Only "misinformation of constitutional magnitude" is cognizable under § 2255. *See id.* at 187; *United States v. Sunrhodes*, 831 F.2d 1537, 1542 (10th Cir. 1987).

The misinformation presented to the sentencing judge concerning the status of Ms. Cecala's plea agreement simply does not rise to this level. The district court knew Mr. Blackwell had provided substantial assistance to the government, and that due in large part to Mr. Blackwell's cooperation with prosecutors Ms. Cecala had originally entered into a deal with the government. Accordingly, the district court granted the prosecution's motion to reward Mr. Blackwell's cooperation with a three-level departure. In addition, however, based on the prosecution's mistaken belief Ms. Cecala's original deal had fallen through and Mr. Blackwell may be called upon to testify at Ms. Cecala's trial, the sentencing judge said he would entertain a subsequent Rule 35 motion requesting a further sentence reduction *if* Mr. Blackwell testified against Ms. Cecala. Only later did the district court learn that in fact Ms. Cecala's plea agreement had not fallen through and Mr. Blackwell never had an opportunity to testify against her and

thus satisfy the court's condition for a further sentence reduction. Nevertheless, any suggestion the sentencing judge would have granted Mr. Blackwell a greater downward departure in the first instance if the court had known Mr. Blackwell would have no further opportunity to assist the government is pure speculation and insufficient to invalidate the original sentencing proceeding on collateral attack.

The fact remains Mr. Blackwell's original sentence was within his guideline range; indeed, it was at the bottom of the range reflecting a three-level adjustment for acceptance of responsibility and a three-level departure for substantial assistance. Given that, we cannot find the misapprehension under which the district court operated resulted in a "complete miscarriage of justice," even if, had the district court known of Ms. Cecala's sentence, it would have sentenced Mr. Blackwell merely to a term of parole. *See Addonizio*, 442 U.S. at 187 ("there is no basis for enlarging the grounds for collateral attack to include claims based not on any objectively ascertainable error but on the frustration of the subjective intent of the sentencing judge."); *see also United States v. Townsend*, 33 F.3d 1230, 1232 (10th Cir. 1994) (McKay, J., concurring) (interpreting Fed. R. Crim. P. 35, which allows courts to correct or reduce sentences, not to allow a

sentencing court to later "change its mind about the appropriateness of the sentence").

Moreover, as we have held the district court had no authority to further depart downward on the basis of insufficient information to explain the perceived disparity, Mr. Blackwell's argument that the misinformation somehow curtailed the sentencing judge's discretion and that he therefore was denied the benefit of his plea bargain is unavailing. Accordingly, we hold the government's failure to inform the district court of Ms. Cecala's probation is not a valid basis for collateral attack on Mr. Blackwell's sentence. Mr. Blackwell's sentence was not affected by the type of misinformation tht rendered the entire proceeding irregular and invalid. The sentence imposed on Mr. Blackwell was and is a lawful one. Therefore, the district court's vacation of Mr. Blackwell's sentence was error.

## C.

We now review the district court's final basis for its order, the asserted ineffective assistance of Keith Goody, Mr. Blackwell's trial counsel.[8] *Blackwell*,

---

[8] Because effective assistance of counsel in criminal cases is a constitutional right, a deprivation thereof renders a resulting conviction and sentence subject to attack under § 2255. *Frand v. United States*, 301 F.2d 102, 103 (10th Cir. 1962).

944 F. Supp. at 868. Mr. Blackwell asserted Mr. Goody's failure to investigate the status of Ms. Cecala's case prior to Mr. Blackwell's first sentencing hearing on April 24, 1995, rendered Mr. Goody's representation ineffective. The court found that "[i]n general ... [Mr.] Goody complied with the highest standards and duties of his profession in conducting [Mr.] Blackwell's defense." *Id.* However, it "reluctantly" found Mr. Goody's failure to investigate and discover the status of Ms. Cecala's case prior to Mr. Blackwell's sentencing hearing rendered Mr. Goody's representation ineffective. *Id.* The court based its finding on Mr. Goody's admission at the § 2255 hearing that "he should have contacted Utah prior to the April 24, 1995, sentencing hearing to discover the status of [Ms.] Cecala." *Id.* The district court's finding of ineffective assistance of counsel presents a mixed question of fact and law we review *de novo*, although we accept the district court's factual findings unless clearly erroneous. *United States v. Carr*, 80 F.3d 413, 417 (10th Cir. 1996).

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-pronged test for evaluating claims of ineffective assistance of counsel. To prevail under that test, Mr. Blackwell must show both (1) Mr. Goody's performance was deficient and (2) that deficiency prejudiced him. *Strickland*, 466 U.S. at 687; *Gillette v. Tansy*, 17 F.3d 308, 310 (10th Cir. 1994).

Mr. Blackwell can satisfy the first prong by showing Mr. Goody's conduct was not "within the wide range of competence demanded of attorneys in criminal cases." *Carr*, 80 F.3d at 417; *Gillette*, 17 F.3d at 310. "'The proper standard for measuring attorney performance is reasonably effective assistance.'" *Gillette*, 17 F.3d at 310-11 (quoting *Laycock v. New Mexico*, 880 F.2d 1184, 1187 (10th Cir. 1989)). Judicial scrutiny of the adequacy of attorney performance must be strongly deferential: "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Moreover, the reasonableness of the challenged conduct must be evaluated from counsel's perspective at the time of the alleged error; "every effort should be made to 'eliminate the distorting effects of hindsight.'" *Edens v. Hannigan*, 87 F.3d 1109, 1114 (10th Cir. 1996) (quoting *Strickland*, 466 U.S. at 689)); *accord Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

We hold Mr. Goody's failure to investigate and discover Ms. Cecala's sentence of probation did not render his representation ineffective. It is true that "counsel has a duty to make reasonable investigations." *Strickland*, 466 U.S. at 691. However, we assess the reasonableness of "a particular decision not to investigate ... for reasonableness in all the circumstances, applying a heavy

measure of deference to counsel's judgments." *Id.* Although Mr. Goody stated he should have checked on Ms. Cecala's case prior to Mr. Blackwell's sentencing, he explicitly made that statement "with the benefit of 20/20 hindsight." Hindsight does not weigh into the evaluation of the reasonableness or adequacy of Mr. Goody's actions. *Strickland*, 466 U.S. at 689; *Edens*, 87 F.3d at 1114. The utter surprise exhibited by the attorneys and judge most familiar with Mr. Blackwell's case upon learning of Ms. Cecala's probation shows Mr. Goody's failure to inquire into the Utah prosecution, viewed from his perspective at the time of Mr. Blackwell's sentencing, was not unreasonable or removed from "the wide range of reasonable professional assistance." *See Strickland*, 466 U.S. at 689, 691. Furthermore, given our Tenth Circuit cases generally holding sentence disparities between co-defendants or co-conspirators cannot premise a downward departure, *see supra*, a reasonable attorney would likely have placed little urgency on inquiring into the outcome of the independent Utah prosecution of Ms. Cecala, presuming that information would have been largely immaterial to Mr. Blackwell's sentencing. This is particularly noteworthy given the substantial deference we must accord Mr. Goody. *See Strickland*, 466 U.S. at 689, 691. Lastly, nowhere did the district court set forth or even address the standard of what constitutes adequate representation; nor does the record contain any

evidence, aside from Mr. Goody's retrospective statement, that Mr. Goody's representation did not meet that standard.

Accordingly, we hold Mr. Goody's representation of Mr. Blackwell was not deficient. Because we so hold, we need not address whether Mr. Goody's failure to inquire into Ms. Cecala's status prejudiced Mr. Blackwell. *See Strickland*, 466 U.S. at 697 ("there is no reason for a court deciding an ineffective assistance claim ... to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Carr*, 80 F.3d at 418 (same). Because Mr. Goody's representation was not deficient, and therefore not ineffective, the district court's vacation of Mr. Blackwell's sentence on the grounds of ineffective assistance of counsel was error.

## IV. Vacation of Mr. Blackwell's Guilty Plea

Lastly, we consider the district court's vacation of Mr. Blackwell's guilty plea. In his § 2255 motion, Mr. Blackwell asserted his plea "was unlawfully induced, in that the plea was supposed to be one which the judge was free to accept or reject the prosecutor's recommendations and be at liberty to impose further downward departure if he felt same was appropriate." Notably, however, Mr. Blackwell did not request the court to vacate his plea, nor does he appear to

-22-

have expanded on this claim at any time since his § 2255 motion. Nevertheless, the district court, in addition to vacating Mr. Blackwell's sentence, *sua sponte* vacated his plea, without providing any explanation or basis for the latter action. *See Blackwell*, 944 F. Supp. at 869. Of course, the apparent inference is that the court predicated its vacation of Mr. Blackwell's plea on the same three bases that underlay its vacation of Mr. Blackwell's sentence. Review of the district court's initial oral ruling at the close of the § 2255 hearing supports this inference. Although there too the court fails to clearly state the basis for its vacation of Mr. Blackwell's plea, the court implicitly premises that action on the disparity between Mr. Blackwell and Ms. Cecala's sentences and its finding Mr. Goody's representation was inadequate.

After sentencing, a guilty plea may be vacated or withdrawn "only to prevent manifest injustice." *United States v. Gines*, 964 F.2d 972, 979 (10th Cir. 1992) (citing advisory comm. note to Fed. R. Crim. P. 32(d), now codified as Fed. R. Crim. P. 32(e)), *cert. denied*, 506 U.S. 1069 (1993); *United States v. Ruiz-del Valle*, 8 F.3d 98, 103 (1st Cir. 1993); *United States v. Davis*, 954 F.2d 182, 184 (4th Cir. 1992). *Cf. United States v. Coscarelli*, 105 F.3d 984, 990-91 (5th Cir. 1997) (appellate court *sua sponte* vacated guilty plea upon finding plea was result of "plain error" affecting "the fairness, integrity or public reputation of judicial

proceedings"); *United States v. Todaro*, 982 F.2d 1025, 1028 (6th Cir.) (defendant seeking to withdraw guilty plea must show "'a fundamental defect which inherently results in a complete miscarriage of justice' or 'an omission inconsistent with the rudimentary demands of fair procedure'" (quoting Fed. R. Crim. P. 32(d), 1983 advisory comm. note)), *cert. denied*, 408 U.S. 943 (1993); *United States v. Hoskins*, 910 F.2d 309, 311 (5th Cir. 1990) (same). *See also* Fed. R. Crim. P. 32(d), 1983 advisory comm. note (noting some authority holds the two standards cited above are "indistinguishable"). The district court made no findings regarding the existence of a "manifest injustice" necessitating vacation of Mr. Blackwell's plea. *See Blackwell*, 944 F. Supp. 864.

Upon review of the record, we find no manifest injustice warranting vacation of Mr. Blackwell's guilty plea, and therefore hold the district court's vacation of Mr. Blackwell's plea to have been error. Neither the disparity between Mr. Blackwell and Ms. Cecala's sentences nor the misapprehension under which the district court operated in sentencing Mr. Blackwell warranted vacation of Mr. Blackwell's sentence; thus, they could not have created a manifest injustice justifying vacation of his guilty plea. Similarly, because Mr. Goody's representation of Mr. Blackwell was not inadequate, no manifest injustice could have resulted therefrom.

Furthermore, even assuming Mr. Goody's representation was inadequate, and that the misapprehension under which the district court operated at Mr. Blackwell's original sentencing hearing and the disparity between Mr. Blackwell and Ms. Cecala's sentence justified vacation of Mr. Blackwell's sentence, those problems still would not have created a manifest injustice warranting vacation of Mr. Blackwell's guilty plea.  Those matters arose at Mr. Blackwell's sentencing on April 24, 1995; he entered his plea on February 2, 1995, almost three months earlier.  Thus, they could have had no impact on the validity of his plea, which Mr. Blackwell does not assert was not knowing and voluntary.  Moreover, we note vacation of Mr. Blackwell's plea may itself have prejudiced Mr. Blackwell.  Because the government's dismissal of other counts against Mr. Blackwell and its requests for downward sentencing departures were part of Mr. Blackwell's plea agreement, vacation of Mr. Blackwell's plea may well prevent Mr. Blackwell from receiving those benefits during subsequent proceedings.

Finally, contrary to Mr. Blackwell's assertion, under the sentencing guidelines district courts never have unfettered discretion to depart downward. *See Koon v. United States*, ___ U.S. ___, 116 S. Ct. 2035, 2045 (1996) (analyzing when departures are allowable).  Thus, the plea agreement was neither breached nor "unlawfully induced."

Because we find the district court's reasons for vacating Mr. Blackwell's sentence and plea pursuant to 28 U.S.C. § 2255 were invalid, we **REVERSE** and **REMAND** with instructions to reinstate Mr. Blackwell's guilty plea and original sentence.[9]

---

[9] Although the district court now feels its original sentence of Mr. Blackwell was unjust, the district court's subjective opinion of justice and fair play do not allow it to evade the requirements of the sentencing guidelines. *See Wogan*, 938 F.2d at 1449 ("While we understand that the court below was motivated by a desire to bring about what it foresaw as a fairer result, all things considered, the principles upon which the guidelines rest cannot 'be adulterated by a judge's personal sense of inequity, no matter how well-intentioned the judge may be.'") (quoting *United States v. Norflett*, 922 F.2d 50, 54 (1st Cir. 1990)).

-26-

96-8110, United States v. Blackwell

Briscoe, Circuit Judge, concurring and dissenting:

I agree with the majority that the district court erred in vacating defendant Blackwell's guilty plea. I disagree, however, with the majority's reversal of the district court's order vacating Blackwell's sentence. I would affirm vacation of Blackwell's sentence and remand for resentencing.

**District court's reliance on misinformation at time of sentencing**

In his § 2255 motion, Blackwell argued his sentence was invalid because, at the time it was imposed, the district court had been misinformed about the status of codefendant Cecala's case. Specifically, Blackwell noted the prosecutor misinformed the court that Cecala's case was likely to go to trial when, in fact, Cecala had pled guilty and received a sentence of probation. In reviewing and granting Blackwell's § 2255 motion, the court focused exclusively (and mistakenly) on the disparity between the sentence Cecala received and the sentence originally imposed on Blackwell. In so doing, the court overlooked the fact that its original sentencing decision was impacted by its belief that Cecala's case was proceeding to trial, and its corresponding belief that Blackwell had not yet given the full measure of his cooperation to the government. As outlined below, it is precisely those grounds that justify vacation of Blackwell's original sentence and entitle him to resentencing based upon correct information.

An error in sentencing can provide the basis for a collateral attack under

§ 2255 only if it is an error "of the most fundamental character, that is, such as rendered the proceeding itself irregular and invalid." United States v. Addonizio, 442 U.S. 178, 186 (1979). Although research has not produced any cases that directly address how to determine when misinformation satisfies this "fundamental character" test, there are several cases which hold (in the context of § 2255 proceedings) that a sentence must be set aside if the defendant can show the challenged information was inaccurate and the sentencing court relied on the misinformation in imposing the sentence. See United States v. Kovic, 830 F.2d 680, 685 (7th Cir. 1987); Jones v. United States, 783 F.2d 1477, 1480 (9th Cir. 1986); United States v. Polselli, 747 F.2d 356, 358 (6th Cir. 1984); United States v. Brown, 715 F.2d 387, 389 (8th Cir. 1983); see also United States v. Larson, 112 F.3d 600, 605-06 (2d Cir. 1997) (sentencing court may not rely on misinformation in imposing sentence); United States v. Pless, 982 F.2d 1118, 1127 (7th Cir. 1992) (due process entitles defendant to fair sentencing procedures, especially right to be sentenced on basis of accurate information); United States v. Barnhart, 980 F.2d 219, 225 (3d Cir. 1992) (sentence based upon misinformation violates defendant's due process rights if misinformation is of constitutional magnitude and has been given specific consideration by sentencing judge); United States v. Silverman, 976 F.2d 1502, 1508 (6th Cir. 1992) (en banc) (sentence may not be imposed on basis of material misinformation); United

States v. Helton, 975 F.2d 430, 434 (7th Cir. 1992) (sentence will be vacated only if defendant shows misinformation was provided to sentencing court and sentencing court relied on misinformation in determining sentence); United States v. Johnson, 911 F.2d 1394, 1402 (10th Cir. 1990) (during sentencing, district court may not rely on misinformation of constitutional magnitude); United States v. Sunrhodes, 831 F.2d 1537, 1542 (10th Cir. 1987) ("Due process insures that a defendant will not be sentenced on the basis of 'misinformation of a constitutional magnitude.'"). Based upon these cases, I believe it is logical to conclude the "fundamental character" test is met if defendant can satisfy both of the above-referenced prongs (i.e., the information was false and was relied upon by the district court in imposing sentence).

As applied here, Blackwell can easily satisfy this two-prong test. First, both Blackwell and the government agree the information provided to the district court concerning the status of Cecala's case was inaccurate. Second, it is apparent from reviewing the record on appeal that the misinformation affected the original sentence imposed by the district court. At the original sentencing hearing, the court sentenced Blackwell to a term of imprisonment of fifteen months, but expressly indicated it would entertain a subsequent Rule 35 motion after Blackwell fulfilled his responsibilities to the government by testifying against Cecala:

There is one other thing that I didn't tell you. I'm a great believer in the carrot-and-stick approach. You've got some cooperating yet to do with the United States, and if you cooperate further, and that means testifying in court in Salt Lake City against Shelly [Cecala], it isn't going to be pleasant, but if you do it, you can come back to me, you need to file your Rule 35 motion, and I'll consider a further reduction.

App. I, Doc. 44 (exhibit). Based upon these statements, I believe it is reasonable to conclude the court intended to reevaluate the significance and usefulness of Blackwell's assistance, and possibly lower his sentence, after completion of Cecala's case. See Fed. R. Crim. P. 35(b) (allowing sentencing court to "reduce a sentence to reflect a defendant's subsequent, substantial assistance in the investigation or prosecution of another person who has committed an offense"). From these statements, one could also argue the court wanted to impose a lower sentence at the time of sentencing, but withheld the lower sentence as an anticipated reward to Blackwell for his future cooperation in the prosecution of Cecala's case.

Although the government contends the district court could not have imposed a lower sentence had it been privy to accurate information concerning the status of Cecala's case, this is incorrect. Prior to the initial sentencing, and in accordance with the terms of the plea agreement, the government filed a motion pursuant to U.S.S.G. § 5K1.1 asking the court to reduce Blackwell's sentence because of his substantial assistance to the government. Section 5K1.1 gives a

district court substantial discretion to depart downward from the guidelines after considering a nonexhaustive list of relevant factors including the "significance and usefulness" of the defendant's assistance. The extent of a departure under § 5K1.1 is within the sentencing court's sound discretion. United States v. Wills, 35 F.3d 1192, 1196-97 (7th Cir. 1994); United States v. Johnson, 33 F.3d 8, 9 (5th Cir. 1994) (sentencing court is free to grant departure greater than recommended by government).

Here, because the district court was informed that Cecala's case was still pending and was likely to go to trial[1], the district court did not know that Cecala: (1) had entered into a plea agreement, (2) apparently agreed to cooperate with and provide information to the government, and (3) received a sentence of probation. For the reasons outlined in the majority opinion, the third factor was clearly irrelevant to Blackwell's sentencing. However, the remaining two factors could

_____

[1] Section 5K1.1 clearly implies the government's motion for downward departure is supposed to evaluate assistance rendered by the defendant. In turn, the district court is directed to give "[s]ubstantial weight . . . to the government's evaluation of the extent of the defendant's assistance." Commentary Note 2. In this case, I question how the government's motion could have properly and sufficiently evaluated the assistance rendered by Blackwell when it was unknown to the prosecutor that Cecala had pled guilty. Notably, I find no indication in the record that the government ever supplemented its motion to accurately reflect the outcome of Cecala's case. Arguably, by indicating it would entertain a Rule 35 motion, the court recognized it could not fully evaluate the extent and usefulness of Blackwell's assistance until after completion of Cecala's case.

have legitimately affected the sentence imposed on Blackwell, irrespective of the sentence that Cecala received.  Specifically, in deciding how far to depart under § 5K1.1, the court could have considered the fact that, because of Blackwell's assistance and willingness to testify, Cecala entered into a plea agreement and agreed to testify against people even higher up in the drug organization.  Stated differently, the court could have reasonably concluded Blackwell's assistance was more significant and useful than if Cecala had not pled guilty and agreed to assist the government.

Because Blackwell was sentenced on the basis of material misinformation, he is entitled to have his sentence vacated and receive a new sentencing hearing.

### *Ineffective assistance of counsel at time of sentencing*

Because I conclude Cecala's decision to plead guilty and cooperate with the government could have reasonably impacted the district court's sentencing decision with respect to Blackwell, I further conclude failure of Blackwell's counsel to investigate and discover the outcome of Cecala's case was deficient and prejudicial to Blackwell.  See Strickland v. Washington, 466 U.S. 668 (1984); Brewer v. Reynolds, 51 F.3d 1519 (10th Cir. 1995), cert. denied, 116 S.Ct. 936 (1996).

## Conclusion

I concur in part and dissent in part. I concur in reversing the district court's vacation of Blackwell's guilty plea, but dissent from the majority's reversal of the district court's vacation of Blackwell's sentence. I would affirm the district court's order vacating Blackwell's sentence and remand this matter for resentencing consistent with the original plea agreement.